[No. 32286.  Department Two.  November 19, 1953.]

AUBREY W. HUNTER, *Appellant*, v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Respondent*.[1]

*Gavin, Robinson & Kendrick*, for appellant.

*The Attorney General* and *Harold J. Hunsaker, Assistant*,
for respondent.

FINLEY, J.—In this appeal there is no dispute as to the
facts. The only question involved is the validity of an in-
terpretation of certain provisions of the industrial insurance
act. The question is whether an injured workman, whose
physical condition has become fixed or static, who has been
classified as *permanently* (partially) disabled, who has
been awarded and has accepted a lump-sum permanent dis-
ability award under Rem. Supp. 1941, § 7679 (f) [*cf.* RCW
51.32.080], is thereafter entitled to a continuation of monthly
percentage time-loss payments under Rem. Supp. 1941,
§ 7679 (d) [*cf.* RCW 51.32.090], on the theory that his earn-

[1]Reported in 263 P. (2d) 586.

ing power (diminished by an industrial injury) has not been restored to pre-accident level.

Aubrey Hunter was injured in extrahazardous employment on October 14, 1946, while working for the Puget Sound Power & Light Company as an outside service lineman. He was allowed, and admittedly received, all benefits to which he was entitled under the industrial insurance act up to April 17, 1949. As of the latter date, a 33⅓ per cent temporary disability award, which Hunter had been receiving monthly, was terminated. On January 4, 1950, the department ordered an award of eighteen hundred dollars for *permanent* partial disability, and further ordered that Hunter's percentage time-loss payments be closed as paid up to April 17, 1949. Hunter appealed to the board only from that portion of the order which terminated his percentage time-loss payments. After hearing, the board modified, in part, the department's order. Percentage time-loss payments on a basis of 27 per cent rather than 33⅓ per cent were continued, covering the period from April 17, 1949 (date the percentage payments had been terminated by the department) to January 4, 1950. The board ordered the termination of all time-loss payments as of the latter date. The superior court upheld the decision of the board. Hunter appealed. As hereinafter indicated, we affirm the trial court.

At this point, it may be helpful to explain the above-mentioned partial revision by the board of the department's action as to the percentage time-loss payments. After his injury, Hunter was able to be employed, not as an outside service lineman but as a meter journeyman. The wage rate of the former was considerably higher. For this reason— because his earning power had been decreased by the injury—the department concluded that Hunter was entitled to percentage time-loss payments at a 33⅓ per cent rate, and such payments were made up to April 17, 1949. It is significant that the department classified him, or his condition, as a *temporary* disability during the entire period after his injury up to January 4, 1950, and, on the latter date, placed him in a *permanent* disability status.

By April 17, 1949, there had been a general wage raise for Puget Sound Power & Light employees. As a result, after that date, Hunter's wages as a meter journeyman actually equaled the wages he had earned formerly as an outside lineman. The department of labor and industries determined that, because his wages as of April 17, 1949, in fact, equaled the wages he had earned at the time of his injury, Hunter's earning power had been restored, and the department terminated his percentage time-loss payments, as of April 17, 1949. It seems the department attached little significance to the fact that the general wage raise (apparently applicable to all Puget Sound Power & Light jobs) had accounted for Hunter's increased earnings, rather than a decrease in disability or an actual restoration of earning power. The board, on appeal by Hunter, viewed the matter differently, recognized the fact that there was a wage differential between outside linemen and meter journeymen on April 17, 1949, and that, in reality, Hunter was still disabled and his earning power had not been restored. Accordingly, he was awarded time-loss payments at the rate of 27 per cent for the period from April 17, 1949, to January 4, 1950. It will be recalled that, as of the latter date, the department had determined that Hunter's disability should no longer be regarded as *temporary*, and, for purposes of industrial insurance compensation, he was classified by the department as permanently disabled, and was given a lump-sum award of eighteen hundred dollars because of his permanent disability. Hunter accepted, and the board approved the permanent disability award. Obviously the permanent award was based upon the change in Hunter's classification from *temporary* to that of *permanent disability*.

In his appeal here, Hunter is claiming: that, in addition to the permanent disability award of eighteen hundred dollars, he is entitled to percentage time-loss payments covering the period after January 4, 1950. His claim is bottomed on the fact that there has not been a complete physical recovery on his part, and that his earning power has not been restored to the pre-accident level. He cites and relies upon the language contained in Laws of 1941, chapter 209, § 1 (d)

(4), pp. 628, 629 (Rem. Supp. 1941, § 7679 (d) (4), RCW 51.32.090 (3)), reading as follows:

"As soon as recovery is so complete that the present earning power of the workman, at any kind of work, is restored to that existing at the time of the occurrence of the injury, the payments shall cease. *If and so long as the present earning power is only partially restored, the payments shall continue* in the proportion which the new earning power shall bear to the old. No compensation shall be payable out of the accident fund unless the loss of earning power shall exceed five per cent." (Italics ours.)

In his brief, appellant contends, specifically, that the above statute "contains no provision that percentage payments because of impaired earning capacity shall cease upon the making of the lump sum award for permanent partial disability." He argues that "Indeed, the provisions for permanent partial disability awards are found in a parallel section, Section (f) . . ." and that "Neither section purports on its face or by its language to restrict or modify the awards provided by the other."

On the other hand, it is contended in respondent's brief that the legislature established two primary classifications relative to compensation for industrial injuries: (1) *permanent* total or partial disability, as set out in Laws of 1941, chapter 209, § 1 (f), pp. 631-633 (Rem. Supp. 1941, § 7679 (f) [*cf.* RCW 51.32.080]); and (2) *temporary* total or partial disability, as set out in Laws of 1941, chapter 209, § 1 (d) (1) and § 1 (d) (2), pp. 628 and 629 (Rem. Supp. 1941, § 7679 (d) [*cf.* RCW 51.32.090]). Respondent urges that temporary disability status, whether it is total or partial, is inconsistent with permanent disability status, whether the latter is total or partial; and that an award relative to the latter status is inconsistent with and terminates time-loss payments relative to temporary disability. The case of *Franks v. Department of Labor & Industries,* 35 Wn. (2d) 763, 215 P. (2d) 416, is cited in support of respondent's position, as follows:

"Usually, during a period of temporary total disability, the workman is undergoing treatment. In any event, such classification contemplates that eventually there will be

either complete recovery or an impaired bodily condition which is static. Until one or the other of these conditions is reached, the statutory classification is temporary total disability. Permanent partial disability, on the other hand, contemplates a situation where the condition of the injured workman has reached a fixed state from which full recovery is not expected. *Miller v. Department of Labor & Industries,* 200 Wash. 674, 94 P. (2d) 764.

"It is plain from the foregoing that *a claimant cannot at one and the same time be classified as temporarily totally disabled and permanently partially disabled. Accordingly, when it has been determined, as it was here, that the condition of the workman has reached a fixed state and he is entitled to a permanent partial disability award, he is not, thereafter, entitled to any compensation for time loss* unless it is subsequently determined that he is in need of further treatment and has been restored to the temporary total disability classification. Here, the permanent partial disability classification had been left undisturbed except for an increase in the percentage award. Appellant seeks to retain that status but to obtain a further increase in the percentage award. As indicated above, the claim for time loss compensation is inconsistent with the claim for a permanent partial disability award, and should not have been submitted to the jury." (Italics ours.)

Appellant urges that the *Franks* case, *supra*, is distinguishable and not controlling as to the instant case, pointing out that the change in classifications, and the inconsistency in language therein emphasized, related to *partial* disability as contrasted with *total* disability rather than to *temporary* disability as contrasted with *permanent* disability. We have difficulty in accepting the fine distinction urged by appellant regarding the *Franks* case, *supra*, because, whether the *Franks* case is distinguishable or not, it seems to us that much of the reasoning therein is most compelling.

■ In any event, we cannot agree with the basic contentions of appellant in the case at bar. In our opinion, subsection (d) and subsection (f) of Rem. Supp. 1941, § 7679, cannot be considered separately or independently from each other and apart from other provisions of the act. We are convinced that the act contemplates two separate and distinct classifications: (1) temporary disability status, and

(2) permanent disability status. Payment of compensation in connection with one status (percentage time-loss payments respecting temporary disability) would not be authorized and would be inconsistent with any simultaneous classification within the permanent disability status and the payment and acceptance of a permanent disability award. Here, there is no dispute that Hunter's disability status was not temporary. As of January 4, 1950, it had become fixed and permanent and was so determined by the department. Under the circumstances, time-loss payments were properly terminated as of January 4, 1950.

The judgment of the trial court sustaining the decision of the board is hereby affirmed.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and DONWORTH, JJ., concur.