[No. 35301-2-I.   Division One.   April 15, 1996.]

DONALD L. DAVIS, *Appellant*, v. BENDIX CORPORATION, *Respondent*.

*Brock D. Stiles* and *Stiles & Stiles, Inc., P.S.*, for appellant.

*Richard A. Jessup*, for respondent.

COLEMAN, J. — Appellant Donald L. Davis appeals the granting of summary judgment for Bendix Corporation. He argues that Bendix did not sufficiently raise the issue upon which basis the court granted summary judgment. Davis also claims that he is entitled to loss of earning power benefits under RCW 51.32.090 for losses incurred from April 7, 1987, through June 28, 1988 (hereinafter "the aggravation period") because his earning power was less than that at the time of his injury. We affirm.

Davis became employed at Bendix in June 1980 as a drill press operator. During his employment, Davis also earned approximately $400 to $500 per month selling insurance. At Bendix, Davis worked 48 hours per week and earned $11.40 per hour plus double overtime. In September 1980, he sustained an occupational disease called bilateral carpal tunnel syndrome affecting the hands and wrists. On December 23, 1980, Davis had corrective surgery for this condition and returned to the company in January 1981. He was still having problems with his hands, however, and was later laid off. Davis brought a claim to receive disability benefits.

On October 15, 1984, Davis' industrial insurance claim was closed. At this time, he was awarded $3,240 in permanent partial disability for a five percent amputation value for both lower arms. Davis' claim was reopened on April 7, 1987, because of an aggravation of his injury. He was working full-time in insurance then but claimed that he could have been earning more as a machinist. He argued that he was entitled to loss of earning power compensation from the date his claim was reopened on April 7, 1987, through June 28, 1988, because his earning power was less than at the time of his injury in September 1980. The Department of Labor and Industries denied his application, finding that Davis had not demonstrated an earning

capacity reduction during his aggravation period as compared to the time of claim closure on October 15, 1984. Following the denial, Davis had a hearing in front of the Board of Industrial Insurance Appeals.

Davis testified that he earned $9,138 in 1987 and $23,048 in 1988. He claimed that his insurance business required him to drive several hours and that this driving and the extensive writing associated with his work caused pain in his hands. From April 7, 1987, through June 28, 1988, he had to split his commission with another agent who had to drive Davis to see clients because Davis' hand pain prevented him from doing so. Three doctors also testified concerning Davis' hand condition, his ability to drive, and his ability to work as an insurance agent.

In its proposed decision and order of January 22, 1990, the Board determined loss of earning power by comparing Davis' earning power during the aggravation period to that at the time of his original injury in September 1980, not at the time of claim closure in October 1984. The Board determined Davis' permanent partial disability award was irrelevant, as such payment compensates one for loss of physical function, not loss of future earnings. Nevertheless, the Board ruled that the evidence presented was insufficient to conclude that the aggravation of the industrial injury was responsible for Davis' diminished earnings during the aggravation period. The Board found that Davis had failed to distinguish between "loss of earnings" and "loss of earning power."

Davis appealed the Board's decision to Superior Court. In a motion for summary judgment, Bendix argued that even if the court found that Davis' earning power had been diminished, loss of earnings should be compared with the date Davis' claim was originally closed in October 1984, not the date of his original injury in September 1980. Bendix further argued that Davis did not present a prima facie case that he suffered a reduction in earning power as a result of an aggravation of his injury.

The court granted summary judgment for Bendix, find-

ing insufficient facts on the record that plaintiff sustained a loss of earning power. The court did not, however, determine which date to use in calculating loss of earning power.

We first examine whether the court erred in granting summary judgment based on a finding that there was no evidence of a loss of earning power because Bendix did not argue this theory in its motion for summary judgment. Davis contends that Bendix requested that the court grant summary judgment solely on the ground that the correct measurement of damages was ascertained by comparing earning capacity during the aggravation period with that at the time of original claim closure on October 15, 1984.

Civil Rule 7(b)(1) states that motions to the trial court "shall state with particularity the grounds therefor, and shall set forth the relief or order sought. . . ." Courts may not consider grounds not stated in the moving party's motion. *Orsi v. Aetna Ins. Co.*, 41 Wn. App. 233, 247, 703 P.2d 1053 (1985).

Davis' claim is meritless because Bendix argued the theory upon which summary judgment was granted. Bendix specifically argued that Davis failed to present expert testimony establishing a reduction in earning capacity during the aggravation period. This is precisely what the trial court ruled. We accordingly reject this claim.

We next address whether there is an issue of material fact concerning Davis' entitlement to loss of earning power benefits under RCW 51.32.090. At oral argument, Davis conceded that, if loss of earning power is calculated using the date of claim closure on October 15, 1984, his income fluctuated to the point where it would be impossible to determine loss of earnings. Thus, we address the proper date for measuring loss of earning capacity.

When reviewing an order of summary judgment, an appellate court must engage in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990) (citing *Highline Sch. Dist. 401 v.*

*Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976)). An order of summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Marincovich*, 114 Wn.2d at 274 (citing *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982)). The court must consider the facts in the light most favorable to the nonmoving party, and the motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Marincovich*, 114 Wn.2d at 274 (citing *Wilson*, 98 Wn.2d at 437).

The only time an injured worker is entitled to time loss compensation is during a period the worker is classified as temporarily totally disabled. *Franks v. Department of Labor & Indus.*, 35 Wn.2d 763, 766, 215 P.2d 416 (1950). The temporary total disability statute reads in pertinent part:

> As soon as recovery is so complete that the present earning power of the worker, at any kind of work, is restored to that existing at the time of the occurrence of the injury, the payments shall cease. If and so long as the present earning power is only partially restored, the payments shall . . . continue in the proportion which the new earning power shall bear to the old[.]

RCW 51.32.090(3)(a)(i). A temporary disability classification contemplates that the claimant will reach an eventual complete recovery or a static impaired condition. *Franks*, 35 Wn.2d at 766. Thus, temporary disability terminates as soon as the claimant's condition stabilizes or as soon as the claimant can perform any sort of work. *Hunter v. Bethel Sch. Dist.*, 71 Wn. App. 501, 507, 859 P.2d 652 (1993), *review denied*, 123 Wn.2d 1031 (1994). Once a worker has been classified as permanently partially disabled, he or she is not entitled to time loss compensation unless the worker needs further treatment and is thus returned to the temporary totally disabled status. *Franks*, 35 Wn.2d at 767; *see In re Douglas G. Weston*, Bd. of Indus. Ins. Appeals No. 861645 (Dec. 30, 1987), at 3.

The permanent partial disability statute specifies dollar amounts recoverable for the loss of various body parts. RCW 51.32.080.

■ For the aggravation period, Davis is entitled to compensation under the temporary total disability statute if he can establish lost earning capacity. The question is whether loss of earning power is measured by comparing earning capacity during the aggravation period with earning capacity at the time of claim closure or that at the time of his original injury.

Davis argues that this court should compare his earning power during his aggravation period with his earning power at the time of the injury in September 1980. Davis claims that the permanent partial disability award and the prior closure of his claim are irrelevant because a partial disability award does not compensate for lost income. Bendix argues that the permanent partial disability award compensated Davis for loss of earning power; thus, Davis is entitled only to the loss of earning power as a result of a worsening of his condition from the date of closure of his claim in October 1984.

We believe that permanent partial disability contemplates future lost earning power. In *Franks*, the court stated, "In the case of permanent partial disability, the Legislature has taken loss of earning power into consideration by prescribing, in dollars, the compensation to be paid for certain specified disabilities." 35 Wn.2d at 774. Thus, contrary to Davis' assertion, the permanent partial disability statute is not unrelated to temporary disability and time loss compensation. Moreover, in *Hunter v. Department of Labor & Indus.*, 43 Wn.2d 696, 701, 263 P.2d 586 (1953), the court held that compensation for time-loss payments for temporary disability would be inconsistent with simultaneously being classified as permanently disabled and accepting a permanent disability award. Because a claimant cannot be simultaneously permanently partially disabled and temporary totally disabled, we believe that the statutes must be read harmoniously:

Temporary total disability compensates for lost income until the extent of disability is fixed; once the condition is fixed, permanent partial ·disability compensates the claimant for future lost earning capacity measured by a percentage loss of bodily function.

In support of his argument that the statutes are unrelated, Davis cites cases stating that the factfinder cannot consider loss of earning power in awarding permanent partial disability. *See Page v. Department of Labor & Indus.,* 52 Wn.2d 706, 710–11, 328 P.2d 663 (1958) ("[C]ompensation for unspecified permanent partial disability is awarded, not on the basis of loss of earning power, but loss of bodily function"); *Cayce v. Department of Labor & Indus.,* 2 Wn. App. 315, 317, 467 P.2d 879 (1970) (trial court erred in considering loss of earning power in fixing permanent partial disability award). These cases in fact support Bendix's position: The factfinder should not consider lost earning power when calculating permanent partial disability because the permanent partial disability statute already anticipated a certain lost earning capacity following a percentage loss in bodily function. We thus believe that a claimant is entitled only to lost earning power that was not contemplated at the time of claim closure when the claimant was awarded permanent partial disability. We hold that the proper date to consider in measuring loss of earning power is the date of claim closure in October 1984. Accordingly, we affirm.

KENNEDY, A.C.J., and BECKER, J., concur.

Review denied at 130 Wn.2d 1004 (1996).