[No. 16792-5-III.    Division Three.    October 29, 1998.]

ALLEN HUBBARD, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

*Michael J. Walker* of *Delay, Curran, Thompson & Pontarolo*, for appellant.

*Christine O. Gregoire, Attorney General*, and *John R. Wasberg, Assistant*, for respondent.

SCHULTHEIS, C.J. — The issue presented in Allen Hub-

bard's Department of Labor and Industries (L&I) aggravation claim is whether the proper date for comparison of earning power during the aggravation period is the date of injury or the date of claim closure. Because we decide that the date of injury establishes the proper date, we reverse the trial court's summary dismissal of Mr. Hubbard's claim.

## FACTS

The parties have stipulated to the facts. During April 1980, while employed as an apprentice taxidermist, Mr. Hubbard injured his neck and right shoulder. Although he received medical treatment and vocational rehabilitation assistance under this claim, Mr. Hubbard's injuries prevented him from returning to work as a taxidermist. Following retraining, he found employment as a photo-lab technician. His claim with L&I was closed in February 1990 with a permanent partial disability award including compensation for 25 percent of the amputation value of the right arm.

In the years following closure of his claim, Mr. Hubbard experienced aggravation of the injury and filed to reopen his claim in May 1992. In June 1995, L&I reopened his claim effective May 1992. Despite Mr. Hubbard's continued employment as a photo-lab technician between May 1992 and December 1995, he experienced more than a five percent reduction in loss of earning power compared to his pre-injury earnings as a taxidermist. His wages during this aggravation period were not, however, five percent less than they were at the date of the claim's closure in February 1990.

In January 1996, L&I issued an order denying Mr. Hubbard loss of earning power benefits (LEP benefits) for the period of May 4, 1992 through January 23, 1996. Mr. Hubbard then appealed that decision to the Board of Industrial Appeals on the issue of the proper method to calculate LEP benefits. After the Board affirmed the denial of LEP benefits, he filed an appeal with the Spokane County

Superior Court. The court granted L&I's motion for summary judgment and this appeal followed.

DISCUSSION

At issue is whether, under the Industrial Insurance Act, LEP benefits should be measured by comparing earning capacity following reopening of the claim to that existing (1) at the time of injury, or (2) at the time of the claim closure following vocational retraining. This issue was recently decided by Division One in favor of L&I in *Davis v. Bendix Corp.*, 82 Wn. App. 267, 917 P.2d 586, *review denied*, 130 Wn.2d 1004 (1996). On the basis of long-standing Board precedent and the policy of the Industrial Insurance Act to insure against loss of wage earning capacity,[1] we decline to follow *Davis*.

■ Because no facts are in dispute and the only issue is a question of law, this court conducts de novo review of the summary judgment order regarding the findings and conclusions of the Board. *Department of Labor & Indus. v. Fankhauser*, 121 Wn.2d 304, 308, 849 P.2d 1209 (1993); *Shum v. Department of Labor & Indus.*, 63 Wn. App. 405, 407, 819 P.2d 399 (1991). Our analysis is driven by recognition that the Act is to be "liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010.

■ Time-loss compensation under the Act is available only during the period that a worker is classified as temporarily totally disabled. *Franks v. Department of Labor & Indus.*, 35 Wn.2d 763, 766, 215 P.2d 416 (1950); *Davis*, 82 Wn. App. 267. When the claimant is able to return to any kind of work, or the condition stabilizes, temporary disability terminates. *Hunter v. Bethel Sch. Dist.*, 71 Wn. App. 501, 507, 859 P.2d 652 (1993), *review denied*, 123

---

[1]RCW 51.12.010; *Adams v. Department of Labor & Indus.*, 128 Wn.2d 224, 233, 905 P.2d 1220 (1995); *Leeper v. Department of Labor & Indus.*, 123 Wn.2d 803, 814, 872 P.2d 507 (1994).

Wn.2d 1031 (1994). Once a worker is classified as permanently partially disabled, time-loss compensation is available only if further treatment becomes necessary and, as a result, temporary total disability status is reinstated. *Franks*, 35 Wn.2d at 767; *Davis*, 82 Wn. App. at 272.

■ RCW 51.32.090 provides the authority for payment of temporary total disability—or time-loss compensation—and its derivative benefit, loss of earning power compensation. Former RCW 51.32.090, in effect at the time of Mr. Hubbard's injury, provided the formula for determining this compensation:[2]

> (1) When the total disability is only temporary, the schedule of payments contained in subdivisions (1) through (13) of RCW 51.32.060 as amended [for total permanent disability] shall apply, so long as the total disability continues.
>
> . . . .
>
> (3) As soon as recovery is so complete that the present earning power of the worker, at any kind of work, is restored to that existing at the time of the occurrence of the injury, the [temporary total disability] payments shall cease. If and so long as the present earning power is only partially restored, the payments shall continue in the proportion, which the new earning power shall bear to the old.

Mr. Hubbard argues that the term "old" contained in former RCW 51.32.090(3) refers to the earning capacity in existence at the time of the industrial injury and therefore requires calculation of LEP benefits for the aggravation period from the date of injury. He further contends the 1993 amendment to RCW 51.32.090 supports this position. The new sections relevant to this analysis provide:

> (3)(a) As soon as the recovery is so complete that the present earning power of the worker, at any kind of work, is restored to that existing at the time of occurrence of the injury, the [temporary total disability] payments shall cease. If and so

---

[2]The law in effect on the date of injury determines the benefits to that worker. *Ashenbrenner v. Department of Labor & Indus.*, 62 Wn.2d 22, 25, 380 P.2d 730 (1963).

long as the present earning power is only partially restored the payments shall:

(i) For claims for injuries that occurred before May 7, 1993, continue in the proportion which the new earning power shall bear to the old; or

(ii) For claims for injuries occurring on or after May 7, 1993, equal eighty percent of the actual difference between the worker's present wages and earning power at the time of injury . . . .

As with the former statute, compensation under this section is payable only if the loss of earning power exceeds five percent. RCW 51.32.090(3)(b).

■ Mr. Hubbard argues that a comparison of his current wages to those at the time of his injury demonstrates a five percent loss. Moreover, he asserts the language found in the present subsection (3)(a)(ii) referring to the "earning power at the time of injury," coupled with legislative silence regarding a distinction between calculation of LEP benefits for claims not yet closed and those that have been reopened, furthers his rationale. Subsequent amendments to statutory law may aid in determining legislative intent. *In re Marriage of Blickenstaff*, 71 Wn. App. 489, 859 P.2d 646 (1993). Our analysis thus turns to a recent decision in which Division One of this court examined RCW 51.32.090 as amended and addressed the same issue.

The factual situation in *Davis* mirrors that of the present case. Mr. Davis's claim for an industrial injury was closed with a permanent partial disability award and then reopened later due to an aggravation of that injury. He appealed L&I's denial of LEP benefits to the Board, which compared his aggravation period earning power to that at the time of injury, but found insufficient evidence to assign responsibility to the aggravation for his diminished earning power. *Davis*, 82 Wn. App. at 270. The Board also concluded that, because a permanent partial disability award compensates for loss of physical function and not loss of future earning, such an award is irrelevant in this context. *Id.*

The superior court agreed with the Board and granted summary judgment for the employer, but did not decide which date to use for comparison of loss of earning power. *Id.* at 270-71. Division One, however, determined that permanent partial disability does contemplate future lost earning power and rejected Mr. Davis's contention that the permanent partial disability statute is unrelated to temporary disability and time-loss compensation. *Id.* at 273. Finding that "a claimant is entitled only to lost earning power that was not contemplated at the time of claim closure," the appellate court held that the date of the claim closure was the date from which to compare loss of earning power. *Id.* at 274.

We disagree. *Davis* relies on the following language in *Franks*: " 'In the case of permanent partial disability, the Legislature has taken loss of earning power into consideration by prescribing, in dollars, the compensation to be paid for certain specified disabilities.' " *Davis*, 82 Wn. App. at 273 (quoting *Franks*, 35 Wn.2d at 774). Time-loss compensation was not at issue in *Franks*. The court was addressing the impropriety of a jury instruction that directed the jurors to consider loss of earning power when determining permanent partial disability compensation. *Franks*, 35 Wn.2d at 773. In a later case, *Page v. Department of Labor & Indus.*, 52 Wn.2d 706, 328 P.2d 663 (1958), the issue is more clearly addressed. Faced with a jury that "was apparently moved by the fact that the respondent's injuries had rendered him totally unable to do the work . . . and thereby greatly curtailed his earning power," the court stated that "compensation for unspecified permanent partial disability is awarded, not on the basis of loss of earning power, but loss of bodily function." *Id.* at 710-11. Further, the court noted that the "legislative plan" for permanent partial disability was to compensate for loss of bodily function *"as distinguished from partial loss of earning power." Id.* at 712 (emphasis added).

In contrast, time-loss compensation is a temporary payment related to the injured worker's pre-injury earning

power. RCW 51.32.090; *Lightle v. Department of Labor & Indus.*, 68 Wn.2d 507, 510, 413 P.2d 814 (1966). The benefits are computed as a percentage of the worker's wages at the time of the injury. RCW 51.32.060. Once a claim is reopened, the worker's condition is no longer fixed and the new disability award is determined according to the statutory provision in effect at the time of the injury. RCW 51.32.160; *Corak v. Department of Labor & Indus.*, 2 Wn. App. 792, 800-01, 469 P.2d 957 (1970). It is only logical that benefits for partial loss of earning power, based on employment at a reduced wage level during temporary disability, likewise are controlled by the schedule in effect at the time of the industrial injury. Assuming that fact, it is also logical that the difference between the injured worker's earning power at the time of the injury and at the time of the injury's aggravation should be the measure for determining LEP benefits.

Not surprisingly, the Board has consistently compared the earning power during the period of aggravation with the earning power at the time of the original industrial injury when determining LEP benefits. *See, e.g., In re Dillon*, No. 95 2430, 1996 WL 473396, at *5 (Wash. Bd. Ind. Ins. App. June 27, 1996); *In re Henderson*, No. 92 0363, 1993 WL 98524, at *3 (Wash. Bd. Ind. Ins. App. Feb. 2, 1993); *In re Haney*, No. 89 3517, 1991 WL 87440 (Wash. Bd. Ind. Ins. App. Feb. 8, 1991). In *Haney*, for example, the Board noted that in computing LEP benefits L&I must consider the extent of the increase that has occurred in the earnings paid for the employment held by the worker at the time of injury. *Haney*, 1991 WL 87440, at *2 (citing *Hunter v. Department of Labor & Indus.*, 43 Wn.2d 696, 698, 263 P.2d 586 (1953)). Mr. Haney had been working as a carpenter for $9.10 per hour when he was injured in 1975. His claim was closed in 1977 with an award for permanent partial disability. Subsequently his claim was reopened due to aggravation of the injury. Although he was able to work as a building inspector during the aggravation periods, his average wage was only $11.04 per hour. The Board found that carpenters earned $18.41 per hour during the last ag-

gravation period. Consequently, Mr. Haney was entitled to LEP benefits. *Haney*, 1991 WL 87440, at *4-6.

It is significant that the Board in *Haney* recognized that although Mr. Haney's claim was closed and reopened twice due to aggravation of the original 1975 injury, the condition of disability was not actually "fixed and stable" until 1989, when L&I entered the final order of permanent partial disability. This interpretation of the basis for loss of earning power compensation is both reasonable and just. For this reason we are convinced that the decision in *Davis* is an aberration in Washington worker's compensation law and reject it as precedent. Accordingly, we reverse summary judgment and remand to the trial court for entry of judgment consistent with this decision.

Reversed.

KATO, J., concurs.

BROWN, J (dissenting) — The issue presented in Allen Hubbard's labor and industry aggravation claim is whether the proper date for comparison of earning power during the aggravation period is the date of injury or the date of claim closure. This precise issue was decided in favor of the Department in Division One. *Davis v. Bendix Corp.*, 82 Wn. App. 267, 917 P.2d 586, *review denied*, 130 Wn.2d 1004 (1996). Mr. Hubbard contends *Davis* was incorrectly decided and urges us to reconsider the same losing arguments made by Mr. Davis in Division One. Although the majority agrees with Mr. Hubbard, I do not. *Davis* is well reasoned and decided. Our Supreme Court has denied review. Therefore, I respectfully dissent.

Reconsideration denied December 23, 1998.

Review granted at 137 Wn.2d 1032 (1999).