[No. 67632-1.   En Banc.]

Argued September 21, 1999.    Decided February 3, 2000.

ALLEN HUBBARD, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Petitioner.*

36

*Christine O. Gregoire, Attorney General,* and *John R. Wasberg, Assistant,* for petitioner.

*Delay, Curran, Thompson, Pontarolo & Walker, P.S.,* by *Michael John Walker,* for respondent.

IRELAND, J. — In this industrial insurance case, we are asked to interpret former RCW 51.32.090(3) (1979) and decide the proper basis for calculating temporary loss of earning power (LEP) benefits when a worker's previous injury is aggravated and his or her claim is reopened following a permanent partial disability (PPD) award.[1] We do not reach this issue because we find that such a worker

---

[1]The Industrial Insurance Act, Title 51 RCW, contemplates two separate and distinct disability classifications, temporary and permanent; it does not authorize the simultaneous payment of temporary and permanent disability benefits. *Hunter v. Department of Labor & Indus.,* 43 Wn.2d 696, 700-01, 263 P.2d 586 (1953). When an injured worker is classified as temporarily disabled, wage replacement benefits may be available under RCW 51.32.090. Such benefits are referred to as "time loss" benefits when the temporary disability is total and "loss of earning power" benefits when the worker is able to return to work but the worker's former earning power is only "partially restored." If a temporarily disabled worker does not fully recover but instead reaches a static impaired condition, the worker's classification is changed from temporarily disabled to permanently disabled and the worker receives either a pension or a permanent partial disability award. *See Franks v. Department of Labor & Indus.,* 35 Wn.2d 763, 766, 215 P.2d 416 (1950); RCW 51.32.060; RCW 51.32.080. When a worker's injury becomes aggravated and his or her claim is "reopened" pursuant to RCW 51.32.160, the worker is reclassified as temporarily disabled until either the disability terminates, in which case disability payments cease, or the worker again reaches a static impaired condition and the claim is reclosed. *See* RCW 51.32.160.

must make a threshold showing that he or she experienced a temporary total disability or an actual loss of earning power as a proximate result of the injury's aggravation. Because the injured worker here has not made the necessary threshold showing, he is not entitled to LEP benefits. Thus, we reverse the Court of Appeals.

## FACTS

Allen Hubbard sustained an industrial injury in 1980 and was unable to return to his former occupation as a taxidermist.[2] After retraining, Hubbard obtained a job as a photo lab technician. The Department of Labor and Industries closed Hubbard's claim in 1990 with a PPD award.

After Hubbard experienced an objective worsening of his previous injury, the Department ordered Hubbard's claim reopened effective May 4, 1992. Pursuant to former RCW 51.32.090(3), Hubbard sought LEP benefits from May 4, 1992 through December 31, 1995, although Hubbard continued to work as a photo lab technician and suffered no additional loss in earning power after the closure of his claim in 1990. The Department denied such benefits.

Hubbard appealed to the Board of Industrial Insurance Appeals contending that pursuant to former RCW 51.32.090(3) his present earning power should have been compared to his earning power when he sustained his injury in 1980 rather than his earning power when the Department closed his claim 10 years later. The Board affirmed the Department's denial of LEP benefits relying on *Davis v. Bendix Corp.*, 82 Wn. App. 267, 274, 917 P.2d 586, *review denied*, 130 Wn.2d 1004, 925 P.2d 989 (1996)[3] and the doctrine of stare decisis.

---

[2]The parties stipulated to the facts.

[3]The *Davis* court held that, under these circumstances, a claimant "is entitled only to lost earning power that was not contemplated at the time of claim closure when the claimant was awarded permanent partial disability." 82 Wn. App. at 274.

Upon appeal to superior court, the court granted the Department's motion for summary judgment. Division Three of the Court of Appeals reversed rejecting *Davis* as precedent and finding that LEP benefits are determined by comparing earning capacity following the reopening of a claim to that existing at the time of the original injury. *Hubbard v. Department of Labor & Indus.*, 92 Wn. App. 941, 948, 965 P.2d 1136 (1998), *review granted*, 137 Wn.2d 1032, 980 P.2d 1283 (1999).

## ISSUE

When an injured worker's industrial insurance claim is reopened based upon an objective worsening of a prior injury, is the worker entitled to LEP benefits pursuant to RCW 51.32.090(3) if the worker continued to work at the same earning level throughout the aggravation period? We hold that such a worker is not entitled to LEP benefits unless the worker makes a threshold showing that he or she suffered a temporary total loss of wages and/or a decrease in earning power proximately resulting from the injury's aggravation.

## ANALYSIS

The Department acknowledges that legislative policy favors "treatment" for injured workers and, thus, a worker who experiences an "objective worsening" of an industrial injury can easily obtain an order reopening a claim for medical benefits. The Department contends, however, that: (1) PPD awards compensate recipients for future lost earning power; (2) the Industrial Insurance Act's (Title 51 RCW) benefits structure implicitly prohibits the "double recovery" of wage replacement benefits; and therefore (3) absent a decrease in Hubbard's earning power since his PPD award, the recovery of LEP benefits would constitute an impermissible double recovery.

Hubbard asserts that whenever a claim is in "open status," whether before an initial claim closure or after a

claim is reopened, the claimant is entitled to LEP benefits " 'while' and until such time as the earning power is <u>fully restored to that existing at the time of the industrial injury.</u>" Resp't's Supplemental Br. at 7. Relying upon the Act's purpose of providing "sure and certain relief" to injured workers and the plain language of RCW 51.32-.090(3), Hubbard contends that the Department must base the amount of LEP benefits upon the relationship between present earning power and earning power when the industrial injury occurred. He further claims that PPD awards do not compensate for future loss of earning power because the amount of such awards are determined solely by loss of bodily function.

Hubbard's arguments rest on the assumption that once an injured worker's disability classification is changed from permanent to temporary, the worker is automatically entitled to temporary wage replacement benefits regardless of whether the worker has demonstrated a total loss of wages or a decrease in earning power proximately resulting from the injury's aggravation as opposed to the original injury. Thus, for Hubbard, the only question is how the amount of such benefits is to be calculated. We disagree with Hubbard's underlying assumption.

To determine what benefits the Act provides to workers whose claims are reopened based upon an aggravation of a prior injury, we look first to the aggravation statute, which provides in pertinent part:

> (1)(a) If aggravation, diminution, or termination of disability takes place, the director *may*, upon the application of the beneficiary, made within seven years from the date the first closing order becomes final, or at any time upon his or her own motion, *readjust the rate of compensation in accordance with the rules in this section provided for the same*, or in a proper case terminate the payment: PROVIDED, That the director may, upon application of the worker made at any time, provide proper and necessary medical and surgical services as authorized under RCW 51.36.010.

RCW 51.32.160 (emphasis added).

The aggravation statute clearly entitles such workers to "proper and necessary medical and surgical services." The statute does not, however, explicitly indicate the nature of benefits available to an aggravation claimant who makes a timely application. Rather, it provides only that the director "may . . . readjust the rate of compensation in accordance with the rules in this section. . . ."

By stating that the rate of compensation "may," and not "shall," be readjusted, the aggravation statute implies that the Department must look to other provisions of the Act to determine whether a particular claimant is entitled to any further wage replacement compensation. *See Clauson v. Department of Labor & Indus.*, 130 Wn.2d 580, 584, 925 P.2d 624 (1996) (right to workers' compensation benefits is statutory; courts will look to Act's provisions to determine a particular worker's entitlement to compensation).

However, it is unclear from the plain language of RCW 51.32.160 whether the Legislature intended that an aggravation claimant could obtain temporary wage replacement benefits pursuant to RCW 51.32.090, an adjustment to a PPD award, a pension pursuant to RCW 51.32.060, or some combination of these benefits.

■ In the absence of clear legislative intent regarding an aggravation claimant's entitlement to benefits, we look to the underlying purpose of the Act, which is to ensure against loss of wage-earning capacity and to provide "sure and certain relief" to injured workers regardless of fault. *Dennis v. Department of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987); *Hunter v. Bethel Sch. Dist. & Educ. Serv. Dist. No. 121*, 71 Wn. App. 501, 507, 859 P.2d 652 (1993); RCW 51.04.010. To these ends, the guiding principle in construing provisions of the Act is that it is remedial in nature and is to be liberally construed to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker. *Clauson*, 130 Wn.2d at 584; *Dennis*, 109 Wn.2d at 470; RCW 51.12.010.

In view of the Act's underlying purpose and the require-

ment of liberal construction, we find that, in a proper case, an aggravation claimant may be entitled to temporary wage replacement benefits while his or her claim is in "open" status following a PPD award. But, the aggravation claimant must show that the temporary wage replacement statute, RCW 51.32.090, applies to his or her particular circumstances. *See Ruse v. Department of Labor & Indus.*, 90 Wn. App. 448, 453, 966 P.2d 909 (1998) (claimant had burden of producing evidence to support claim that he was disabled by an occupational disease and, thus, entitled to benefits), *aff'd,* 138 Wn.2d 1, 977 P.2d 570 (1999).

█ Thus, we turn to the language of former RCW 51.32.090 (1979) in effect when Hubbard sustained his industrial injury. *See Ashenbrenner v. Department of Labor & Indus.*, 62 Wn.2d 22, 25, 380 P.2d 730 (1963) (rights of claimants to disability compensation is determined according to law in force when claimant was injured rather than by a law that becomes effective subsequently).

Former RCW 51.32.090[4] provided in relevant part:

> (1) When the total disability is only temporary, the schedule of payments contained in subdivision (1) through (13) of RCW 51.32.060 as amended shall apply, so long as the total disability continues.
>
> . . . .
>
> (3) As soon as recovery is so complete that the present earning power of the worker, at any kind of work, is restored to that existing at the time of the occurrence of the injury, the payments shall cease. If and so long as the present earning power is only partially restored, the payments shall continue in the proportion which the new earning power shall bear to

---

[4]Although we quote the former version of RCW 51.32.090(3), the current version is substantively the same for injuries, like Hubbard's, that occurred before May 7, 1993. *See* RCW 51.32.090(3)(a)(i). The current version, however, provides a different *measure* of LEP benefits for injuries occurring on or after May 7, 1993. *See* RCW 51.32.090(3)(a)(ii) (LEP benefits shall "equal eighty percent of the actual difference between the worker's present wages and earning power at the time of injury"). Our resolution of the entitlement issue is not affected by the date of the injury or by whether we apply the former or current version of RCW 51.32.090(3).

the old. No compensation shall be payable unless the loss of earning power shall exceed five percent.

The Supreme Court has the ultimate authority to determine the meaning and purpose of a statute. *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992). "Our paramount duty in statutory interpretation is to give effect to the Legislature's intent." *Elgin*, 118 Wn.2d at 555. We read each provision of a statute in relation to the other provisions and construe a statute as a whole. *Weyerhaeuser Co. v. Tri*, 117 Wn.2d 128, 134, 814 P.2d 629 (1991).

"Temporary total disability" is a condition that temporarily incapacitates a worker from performing any work at any gainful employment. *Oien v. Department of Labor & Indus.*, 74 Wn. App. 566, 569, 874 P.2d 876 (1994), *review denied*, 125 Wn.2d 1021, 890 P.2d 463 (1995); *Hunter*, 71 Wn. App. at 507-08; *Bonko v. Department of Labor & Indus.*, 2 Wn. App. 22, 25, 466 P.2d 526 (1970). It differs from permanent total disability only in duration of disability, and not in its character. *Bonko*, 2 Wn. App. at 25; *see also* RCW 51.08.160.

A claimant's right to temporary total disability benefits (time loss payments) terminates when the claimant's earning power, at any kind of work, is restored to that existing at the time of the occurrence of the injury, or when the claimant's claim is closed. RCW 51.32.090; *Hunter v. Department of Labor & Indus.*, 43 Wn.2d 696, 701, 263 P.2d 586 (1953) (temporary disability benefits may not be paid after a closing order is issued). Temporary total disability benefits also terminate when the claimant is able to earn a wage at any kind of reasonably continuous and generally available employment. *Hunter*, 71 Wn. App. at 507-08. At this point, the temporarily disabled claimant becomes eligible for reduced time-loss compensation, referred to as LEP benefits. RCW 51.32.090(3); *Hunter*, 71 Wn. App. at 506-07. For injuries occurring before May 7, 1993, LEP benefits are a percentage of the temporary total benefits determined by comparing the new and old earning power. RCW 51.32.090(3)(a)(i).

Based on the stipulated facts before this Court, Hubbard

has not established that as a proximate result of his injury's aggravation he was temporarily incapacitated from performing any work at any gainful employment. *See Oien*, 74 Wn. App. at 569. In fact, since March 1989 and through all times relevant in this appeal Hubbard "has continued to work in the area for which he was retrained by the Department." Administrative Record (AR) at 32. Because Hubbard was never temporarily totally disabled as a result of his injury's aggravation, he is not entitled to time-loss compensation. *Hunter*, 71 Wn. App. at 507-08.

Nor has Hubbard shown that he is entitled to LEP benefits. RCW 51.32.090(3) contemplates that a claimant is entitled to such benefits only when a claimant has been temporarily totally disabled and then returns to work for less compensation. Based on the record here, Hubbard never established any period of temporary total disability proximately resulting from his injury's aggravation. Further, Hubbard has not experienced any loss of earning power based upon his injury's aggravation. Thus, Hubbard failed to make the necessary threshold showing that RCW 51.32.090(3) applies to his aggravation claim.

Hubbard asserts that the "if and so long as" language indicates that a claimant is entitled to LEP benefits whenever a claim is in open status and earning power is only "partially restored," regardless of whether there has previously been an initial claim closure. He points to the absence of language distinguishing between original claims and claims reopened because of aggravation.

Contrary to Hubbard's assertion, the fact that RCW 51.32.090(3) does not distinguish between original claims and reopened claims does not necessarily indicate legislative intent to treat such claims identically. Rather, it seems just as likely that the Legislature never contemplated LEP benefits under the facts here. *See Roger v. Miles Labs., Inc.*, 116 Wn.2d 195, 201, 802 P.2d 1346 (1991) (courts do not determine legislative intent from the absence of statutory language).

Considering the statute as a whole, the Legislature ap-

parently intended that LEP benefits would follow a temporary total disability. The "if and so long as" language implies that LEP benefits will be continuous, but only until earning power is fully restored or, alternatively, the claim is closed. *See Hunter*, 43 Wn.2d at 701.

Although the stipulated facts before this Court do not indicate whether Hubbard received time-loss or LEP benefits following the original injury in 1980, the 1990 closure of Hubbard's claim necessarily broke the continuity of any LEP benefits received as a result of the original injury. *See Hunter*, 43 Wn.2d at 701. Thus, Hubbard's current claim for LEP benefits must necessarily derive from the injury's aggravation. Even if we assume that a claimant can obtain LEP benefits without an immediately preceding temporary total disability, the statute necessarily presumes that a worker is entitled to LEP benefits only when there has been an actual loss of earning power.

Hubbard's argument that the purpose of LEP benefits is to provide injured workers an incentive to promptly return to employment actually supports the conclusion that LEP benefits are not appropriate here. *See* Appellant's Br. at 7-11. Hubbard does not need an incentive to return to work because apparently his injury's aggravation has not rendered him temporarily totally disabled and, in fact, has had *no* effect upon his earning power.

Because Hubbard has failed to make the necessary threshold showing, this Court is not required to determine the correct formula for calculating LEP benefits in an aggravation case where such benefits are proper. Thus, we do not presently resolve the existing conflict in the Court of Appeals as to whether "old" in RCW 51.32.090(3) refers to the claimant's earning power when the original injury occurred or when the claim was initially closed. Instead, we encourage the Legislature to clarify its intent in RCW 51.32.090(3)(a) when a claimant seeks LEP benefits based upon the aggravation of an injury for which he or she has already received a PPD award.

We reverse the decision of the Court of Appeals and

uphold the Department's denial of benefits and the trial court's summary judgment dismissal of Hubbard's appeal.

Guy, C.J., and Smith, Johnson, Madsen, Alexander, and Sanders, JJ., concur.

Talmadge, J. (concurring) — I agree with the majority's disposition here: the proper date for evaluating any diminution in Hubbard's earning power occasioned by the aggravation of his industrial injury is the date the claim was closed, rather than the date of his injury. But the more straightforward reason for reversing the decision of the Court of Appeals and affirming the superior court summary judgment in favor of the Department of Labor and Industries is that articulated by the dissent in the Court of Appeals in this case. The majority opinion of Division One of the Court of Appeals in *Davis v. Bendix Corp.*, 82 Wn. App. 267, 917 P.2d 586, *review denied*, 130 Wn.2d 1004, 925 P.2d 989 (1996), is well-reasoned and should control.

As the Court of Appeals below noted, the schedule of permanent partial disability benefits in Title 51 RCW includes a component designed to compensate an injured worker for loss of earning power. *Franks v. Department of Labor & Indus.*, 35 Wn.2d 763, 774, 215 P.2d 416 (1950); *Kuhnle v. Department of Labor & Indus.*, 12 Wn.2d 191, 197, 120 P.2d 1003 (1942); *Harrington v. Department of Labor & Indus.*, 9 Wn.2d 1, 7, 113 P.2d 518 (1941). As Judge Coleman wrote for the Court of Appeals in *Davis*:

> We believe that permanent partial disability contemplates future lost earning power. In *Franks*, the court stated, "In the case of permanent partial disability, the Legislature has taken loss of earning power into consideration by prescribing, in dollars, the compensation to be paid for certain specified disabilities." 35 Wn.2d at 774. Thus, contrary to Davis' assertion, the permanent partial disability statute is not unrelated to temporary disability and time loss compensation. Moreover, in *Hunter v. Department of Labor & Indus.*, 43 Wn.2d 696, 701, 263 P.2d 586 (1953), the court held that compensation for time-loss payments for temporary disability would be inconsistent

with simultaneously being classified as permanently disabled and accepting a permanent disability award. Because a claimant cannot be simultaneously permanently partially disabled and temporarily totally disabled, we believe that the statutes must be read harmoniously: Temporary total disability compensates for lost income until the extent of disability is fixed; once the condition is fixed, permanent partial disability compensates the claimant for future lost earning capacity measured by a percentage loss of bodily function.

*Davis*, 82 Wn. App. at 273-74.

I would adopt the analysis of the Court of Appeals in *Davis*. To hold otherwise opens the possibility an injured worker can recover doubly for lost earning capacity: for the lost earning capacity in the future represented by the schedule of permanent partial disability awards in Title 51 RCW and under RCW 51.32.090(3)(a)(i) without a showing that the worker's aggravation of the former industrial injury caused an additional loss of earning power not contemplated by the permanent partial disability award.

BAKER, J. PRO TEM., concurs with TALMADGE, J.