# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| LSI LOGISTIC SERVICE SOLUTIONS LLC, a Washington limited liability company; LABELING SERVICES, INC, an inactive Washington corporation, | ) ) ) ) | No. 74125-0-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) ) | |
| STATE OF WASHINGTON, DEPARTMENT OF LABOR AND INDUSTRIES, | ) ) ) ) | |
| | ) | |
| Respondent. | ) ) | FILED: September 26, 2016 |
| | ) | |

APPELWICK, J. — LSI applied to the Department to change its risk classification for purposes of industrial insurance from freight handler service to warehouse. The Department concluded that the freight handler classification was correct. Both the Board of Industrial Insurance Appeals and the superior court affirmed the Department. We affirm.

## FACTS

Labeling Services, Inc. is now an inactive Washington corporation. When it was in business, Labeling operated in a warehouse facility, employing about 15 employees. From the second quarter of 2010 through the first quarter of 2011,

most of its business involved receiving canned salmon from Alaska, labeling it, storing it, and shipping it when requested.

LSI Logistic Service Solutions LLC is the successor company to Labeling. LSI expanded the business to other products, including rice, sugar, salmon oil, and laminate flooring. LSI's business consists of receiving inventory from other companies, storing it, and shipping it out when requested.[1]

In 2013, LSI requested a change in classification for industrial insurance premiums. The Department of Labor & Industries (Department) is responsible for classifying industries for purposes of insurance premiums according to the hazards involved in an occupation. RCW 51.16.035. LSI had previously been classified as a freight handler service under WAC 296-17A-2002-13, and it sought to be reclassified as a warehouse under WAC 296-17A-2102-00. LSI filed amended reports with the Department for the period of April 1, 2010 through March 31, 2013. Under its proposed classification, LSI sought a refund of $22,293.93.

In response to this request, the Department reviewed the appropriate risk classification for LSI. Thomas Boyle, the account manager, conducted an investigation and performed a site visit to observe LSI's business operations and interview its employees. The Department concluded that the freight handling classification was correct.

---

[1] Below, the parties stipulated that Labeling and LSI performed the same services during the time period at issue and that the Board's determination would apply to both Labeling and LSI. For clarity, we refer to Labeling and LSI collectively as LSI, except as necessary to distinguish between the two.

LSI appealed the Department's decision to the Board of Industrial Insurance Appeals. The Board held a hearing to determine whether the Department correctly classified LSI as a freight handler service. Nic Klamke, co-owner and president of LSI, testified at the hearing. He described LSI's business operations. Boyle testified as well, providing the details of his investigation.

After the hearing, the industrial appeals judge (IAJ) issued a proposed decision and order affirming the Department's decision. The IAJ found that LSI employees unloaded, repackaged, and reloaded goods for shipping using pallet jacks and forklifts. And, the IAJ found that the proper risk classification was freight handling. The Board adopted the proposed decision and order.

LSI appealed to the superior court. After reviewing the record, the court affirmed the decision of the Department. The court also found that LSI employees unloaded, inspected, labeled, repackaged, and reloaded goods for shipping using pallet jacks and forklifts. And, the court found that the proper classification for Labeling during the second quarter of 2010 through the first quarter of 2011 and for LSI during the second quarter of 2011 through the first quarter of 2013 was freight handling. It concluded that the Board properly affirmed the Department's order classifying LSI as such. LSI appeals.

## BACKGROUND

The Industrial Insurance Act (IIA), title 51 RCW, exists to mitigate the suffering and economic loss arising from injuries and death occurring in the course of employment. RCW 51.12.010. The IIA is to be liberally construed to achieve the purpose of providing compensation to all covered employees injured in their

employment. <u>Hubbard v. Dep't of Labor & Indus.</u>, 140 Wn.2d 35, 41, 992 P.2d 1002 (2000).

To accomplish this purpose, the IIA tasks the Department with classifying all industries by the degree of hazard and assigning premium rates accordingly. RCW 51.16.035. By delegating this authority to the Department, the legislature gave the Department broad discretion to create a system of risk classification. <u>Di Pietro Trucking Co. v. Dep't of Labor & Indus.</u>, 135 Wn. App. 693, 704, 145 P.3d 419 (2006).

The Department's classification plan has over three hundred business or industry classifications. WAC 296-17-31011(4). The two at issue here—warehouses of general merchandise and freight handling services—are set out in WAC 296-17A-2102-00 and WAC 296-17A-2002-13.

WAC 296-17A-2102-00 is the classification for warehouses storing general merchandise. It "[a]pplies to establishments operating as warehouses for general merchandise. This merchandise belongs to a customer and is usually stored for long periods of time." Id. Typically, warehouses store bulk, nonperishable materials, such as coffee, dry cement, potatoes, or rice. Id. Employees perform duties such as maintaining the facility, moving merchandise within the facility, recordkeeping, routine maintenance, and security. Id. The equipment they use includes cleaning and recordkeeping supplies, forklifts, pallet jacks, and shop vehicles. Id.

WAC 296-17A-2002-13 is the freight handler services classification. It "[a]pplies to establishments engaged in packing, handling, shipping, or

4

repackaging merchandise or freight which is owned by others and is not covered by another classification." Id. These establishments handle general cargo, which is usually in boxes, cartons, crates, bales, or bags. Id. General cargo also includes lumber, logs, steel, pipe, grains, produce, machinery, and vehicles. Id. Freight handler services are usually located at railroad yards, airports, or warehouses. Id. Their employees "perform duties such as, but not limited to, unloading, checking in and weighing goods, sorting and repackaging goods, tiering (placing in a series of rows one above the other), and reloading goods for shipment." Id. They use equipment such as "pallet jacks, hand trucks, forklifts, boom trucks, mobile cranes or overhead track cranes, and hand tools." Id.

The freight handler services classification excludes "establishments engaged in warehousing operations for general merchandise which are to be reported separately in classification [WAC 296-17A-]2102[-00]." Under the heading "Special notes," it clarifies the distinction between warehouses and freight handlers:

> Establishments engaged as freight handlers have the hazard of the continual movement of goods, in contrast to warehousing operations in classification 2102-00 that usually store goods for long periods of time. In addition, freight handling services providers do not operate warehouses and storage facilities as a general rule.

Id.

5

## DISCUSSION

Appeals of proceedings under the IIA are governed by the ordinary civil standard of review.[2] RCW 51.52.140. Therefore, this court reviews the superior court's decision rather than the Board's decision.[3] Birgen v. Dep't of Labor & Indus., 186 Wn. App. 851, 855-56, 347 P.3d 503 (2015). We determine whether substantial evidence supports the superior court's findings and whether those findings support the court's conclusions of law. Id. at 856. Conclusions of law are reviewed de novo. Id.

LSI argues that under the APA we must reverse the Department's decision, because it acted inconsistently by classifying LSI differently than LSI's competitors. LSI relies only on evidence of those competitors' risk classifications that was presented through Klamke's testimony.[4] However, the APA does not apply here. The issue of whether LSI's competitors are correctly classified is not before this court. We decline to review LSI's claims of inconsistent treatment. See Ramos v. Dep't of Labor & Indus., 191 Wn. App. 36, 40-41, 361 P.3d 165 (2015) (noting

---

[2] As the Department correctly points out, the Administrative Procedure Act (APA), chapter 34.05 RCW, does not govern this appeal. RCW 51.52.140 (stating that the practice in civil cases applies to appeals under the IIA, unless otherwise provided). The APA applies to an industrial insurance case if appeal is taken from a decision concerning a notice of assessment. RCW 51.48.131. The term "assessment" refers to taxes—money payments made by an employer or worker for the accident fund, the medical aid fund, the supplemental pension fund, or any other fund under the IIA. RCW 51.08.015. Because this case involves a request for a reclassification rather than a notice that payments were due, the APA does not apply.

[3] To the extent LSI assigns error to the Board's findings and conclusions, we treat them as challenges to the superior court's findings and conclusions.

[4] LSI offered exhibits showing the risk classifications of these competitors, but the IAJ rejected them.

6

that whether self-serving testimony should be disregarded is a credibility issue for the trial court).

The question before this court is whether the superior court erred in classifying LSI as a freight handler service rather than a warehouse. LSI contends that the findings of fact that LSI and Labeling were freight handler services engaged in unloading, inspecting, labeling, repackaging, and reloading goods for shipping are not supported by substantial evidence.

The evidence below shows that LSI certainly does perform some of the functions of a warehouse. It operates within a warehouse and as such must maintain the warehouse and the goods within it. It uses forklifts to move products within the facility. And, it stores goods for at least one month at a time, with some goods stored for two to three years.

But, the evidence also establishes that Labeling did and LSI does much more than operate a warehouse. Klamke explained that Labeling's primary function was to handle canned salmon. The product was shipped to Labeling's facility from Alaska. The company then unloaded the pallets using forklifts. Labeling ran the product through its production line. In the production line, the product went through a machine with a magnet. It was inspected. Next, it was labeled by a labeling machine and a casing machine. When this process was complete, the product was then stored in the warehouse awaiting shipment. The product was shipped out when Labeling's customer requested it.

Klamke testified that while LSI no longer handles the canned salmon product, it now receives, stores, and ships products such as rice, sugar, and

7

laminate flooring. He stated that products are usually shipped to LSI on pallets. Products are driven through the warehouse with forklifts or pallet jacks. Klamke explained that sometimes, LSI employees have to unload products by hand and stack them onto pallets. LSI has a pallet shrink wrap machine that it uses when repalleting some of the freight. Klamke estimated that LSI uses the pallet shrink wrap machine for around 25 percent of the floor loaded freight. LSI then puts the product in the warehouse for storage until it receives an order to ship it out. Later, LSI loads the product out of the warehouse and prepares it for shipment, based on demand from retail customers.

Klamke gave the example of Unilin Flooring to explain how LSI operates. He stated that Unilin Flooring sends LSI the product and LSI holds it. When requested, LSI pulls the product, stages it, and loads it. Then, LSI sends the product to Costco distribution centers on Unilin Flooring's behalf.

And, the IAJ admitted as exhibits several pages from LSI's website. This website lists LSI's value-added services: "Labeling and Packaging"; "Bundle Wrap"; "Pick and Pack"; "Shrink Wrap"; "Ticketing and Labeling"; "Routing and Return Processing"; "FED EX" (Federal Express), "UPS" (United Parcel Service) or customer choice; "Bundling"; "Repackaging"; "Special Handling"; "G.O.H. (Garment on Hanger)." It specifies that these services promote "[f]ast, efficient product conversion." Klamke acknowledged that LSI offers these services, although he stated that customers rarely request them. LSI's website also advertises LSI as able to serve customers needing large volume distribution of

goods and customers needing assistance in emergency situations, such as short notice customer requests, product recalls, and high volume rollouts.

This evidence shows that during the relevant time frames, Labeling and LSI employees unloaded, inspected, labeled, repackaged, and reloaded goods for shipping. They used specialized machinery to accomplish these services. Thus, substantial evidence supports the superior court's findings.

These findings clearly support the conclusion that Labeling and LSI are properly classified as freight handler services rather than warehouses. The purpose of these classifications is to weigh the hazards inherent in a business and assess premiums accordingly. RCW 51.16.035. The hazards of LSI's line of work are not those involved in simply maintaining a warehouse. Instead, LSI's employees risk the hazards involved in the continual movement of goods. We hold that the superior court did not err in concluding that Labeling and LSI were correctly classified as freight handler services.

LSI requests attorney fees on appeal under RCW 4.84.350. Because LSI has not prevailed on this appeal, we decline to award fees.

We affirm.

WE CONCUR: