IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DALISAY L. BAYNA,

                Respondent,

       v.

CATHOLIC HEALTH INITIATIVES
FRANCISCAN HEALTH SYSTEM,

                Appellant.

No. 81732-9-I

DIVISION ONE

UNPUBLISHED OPINION

SMITH, J. — Dalisay Bayna appeals the superior court's order affirming the Board of Industrial Insurance Appeal's decision that ended her time loss benefits as of August 17, 2017, and closed her claim as of May 18, 2018, without an award of permanent partial disability. Bayna claims she was unable to secure and maintain gainful employment between August 18, 2017, and March 15, 2018, was in need of further medical treatment as of May 18, 2018, and was partially permanently disabled when the Department of Labor and Industries (Department) closed her claim. Bayna also challenges the superior court's ruling on a pretrial procedural motion. For the reasons that follow, we affirm.

FACTS

On October 9, 2015, Dalisay Bayna was working as a nurse in an Intensive Care Unit (ICU) at Catholic Health Initiatives Franciscan Health System (CHI), formerly Highline Medical Center. She injured her neck and right shoulder while attempting to rotate a patient. She opened a claim for workers'

compensation benefits with the Department. On May 18, 2018, the Department closed the claim, with time loss compensation paid to Bayna through August 17, 2017. The Department concluded that as of May 18, 2018, Bayna needed no further medical treatment for her workplace injury and she was not entitled to a permanent partial disability award. Bayna appealed.

The issues before the industrial appeals judge (IAJ) on appeal were (1) whether Bayna had the ability to obtain and maintain gainful employment between August 18, 2017, and March 15, 2018, (2) whether Bayna's condition was fixed and stable and she was in need of no further treatment as of May 18, 2018, (3) whether Bayna sustained new injuries to her wrist and back that required treatment and were related to the 2015 work injury, and (4) whether Bayna was permanently partially disabled and therefore entitled to a partial disability award.

At the hearing before the IAJ, Bayna and her spouse testified in person. She also presented the deposition testimony of two treating physicians, Dr. Alvin Nayan, an occupational medicine specialist, and Dr. Keith Fujisaki, an orthopedic surgeon. CHI presented the deposition testimony of two orthopedic surgeons, Dr. Louis Kretschmer and Dr. James Dupree. CHI also presented the live testimony of Cheryl McDonald, a vocational counselor.

Dr. Nayan first saw Bayna a few days after her injury. Based on her symptoms and presentation, he believed that she had a "[r]ight-shoulder and cervical strain." Dr. Nayan ordered X-rays, prescribed anti-inflammatories and muscle relaxants, and ordered massage therapy. Dr. Nayan also imposed

numerous injury-related work restrictions, including restrictions on lifting weight, lifting arms above the shoulder, power gripping and fine manipulation. CHI was unable to accommodate the restrictions.

Soon after, Dr. Nayan ordered magnetic resonance imaging (MRI). Based on those results, Dr. Nayan referred Bayna to Dr. Fujisaki.

Bayna first saw Dr. Fujisaki two months after the injury. He diagnosed her with rotator cuff strain of her shoulder and impingement syndrome. Dr. Fujisaki initially treated Bayna with subacromial cortisone injections and physical therapy. But after her symptoms persisted for nearly a year, Dr. Fujisaki recommended shoulder surgery.

In the meantime, Dr. Nayan referred Bayna for a functional evaluation. According to that evaluation, Bayna could tolerate "medium level" full-time work for eight hours per day. Also, approximately a year after the injury, Dr. Kretschmer performed an independent medical exam (IME). Dr. Kretschmer diagnosed Bayna with right shoulder tendonitis related to her injury and adhesive capsulitis, or "frozen shoulder." He determined that further treatment was "appropriate."

CHI also arranged for a vocational counselor to perform an assessment. The counselor determined that Bayna could not return to work as an ICU nurse because of the physical demands, but she had "excellent" transferrable skills. The counselor concluded that Bayna is employable in a variety of health care settings and positions. She identified the nurse case manager as a position that was significantly less physical than her prior position and corresponded to

3

Bayna's preferences. The vocational counselor also evaluated the labor market and concluded there was adequate job availability in Bayna's area.

The Department approved surgery, and in March 2017, Dr. Fujisaki performed an arthroscopic procedure to repair a labral tear and subacromial decompression. Afterwards, Bayna engaged in physical therapy. Three months postsurgery, Dr. Fujisaki believed that Bayna could return to work, with some modification of her physical duties. In August 2016, five months after surgery, Dr. Fujisaki noted that Bayna had surpassed her presurgery condition. He still recommended that she continue physical therapy and participate in work conditioning.

Both Drs. Nayan and Fujisaki approved Bayna's release for work as a nurse case manager, a sedentary position, as of August 15, 2017. In the fall of 2017, Bayna experienced pain in her right wrist and low back while participating in a work conditioning program. She reported complaints to Drs. Nayan and Fujisaki and ceased that program. Dr. Nayan saw Bayna for the last time on March 15, 2018.

Dr. Dupree performed a second IME on February 2018. He reported that Bayna's chief complaints at that time were lingering shoulder pain, right wrist pain, and some fatigue with overhead lifting. His examination revealed that Bayna's shoulder range of motion and strength were within the normal range. Dr. Dupree determined that when he saw her, Bayna had the ability to perform the duties of a nurse case manager and, based on the records, agreed with the treating physicians' decision to release her to work in that capacity in August

4

2017. Dr. Dupree concluded that Bayna's wrist and back conditions were not related to her 2015 workplace injury.

Following the hearing, the IAJ issued a proposed decision and order affirming the Department's order. The Board of Industrial Insurance Appeals (Board) denied Bayna's petition for review and adopted the IAJ's proposed decision and order.

Bayna appealed to superior court. After considering the parties' briefing and oral arguments at a bench trial, the superior court issued a written decision upholding the Board's order. The superior court made the following relevant findings and conclusions that largely mirror the findings of the Board.[1]

## I. FINDINGS OF FACT

1. Ms. Dalisay Bayna sustained an industrial injury on October 9, 2015, when she injured her neck and right shoulder while attempting to rotate a 575-pound patient.

. . . .

3. Ms. Bayna has work restrictions that include restrictions on her ability to push, pull, and lift. Ms. Bayna also has restrictions concerning her ability to reach or work above her shoulders. Ms. Bayna was also restricted from power gripping and any fine manipulation in regards to her right upper extremity.

4. Ms. Bayna was able to perform and obtain gainful employment on a reasonably continuous basis from August 18, 2017, through March 15, 2018.

5. As of May 18, 2018, Ms. Bayna's conditions proximately caused by the industrial injury were fixed and stable and did not need further proper and necessary treatment.

---

[1] The only material difference is that the superior court's final conclusion of law affirmed the Board's October 8, 2019, order, whereas the Board's decision affirmed the Department's May 18, 2018, order.

6. On May 18, 2018, Ms. Bayna did not have a permanent partial disability proximately caused by the October 9, 2015, industrial injury.

7. Ms. Bayna's conditions identified as right wrist pain and low back pain were not proximately caused or aggravated by her industrial injury.

## II. CONCLUSIONS OF LAW

. . . .

2. Ms. Dalisay Bayna was not a temporarily totally disabled worker within the meaning of RCW 51.32.090 from August 18, 2017, through March 15, 2018.

3. Ms. Bayna's conditions proximately caused by the industrial injury were fixed and stable as of May 18, 2018, and she is not entitled to further treatment per RCW 51.36.010.

4. On May 18, 2018, Ms. Bayna did not have a permanent partial disability, within the meaning of RCW 51.32.080, proximately caused by the industrial injury.

5. The Board of Industrial Insurance Appeals order of October 8, 2019, is correct and is affirmed.

The court denied Bayna's motion for reconsideration. Bayna appeals.

ANALYSIS

Standard of Review

Reviewing workers' compensation determinations under the Industrial Insurance Act (IIA), Title 51 RCW, the superior court reviews the Board's decision de novo, relying solely on the evidence contained in the Board's certified record. RCW 51.52.115; Malang v. Dep't of Labor & Indus., 139 Wn. App. 677, 683, 162 P.3d 450 (2007); Rogers v. Dep't of Labor & Indus., 151 Wn. App. 174, 179-81, 210 P.3d 355 (2009); McDonald v. Dep't of Labor & Indus., 104 Wn. App. 617, 621-22, 17 P.3d 1195 (2001). The superior court considers the Board's findings and decisions prima facie correct. Ruse v. Dep't of Labor &

Indus., 138 Wn.2d 1, 5, 977 P.2d 570 (1999); RCW 51.52.115. The party challenging the Board's findings and decisions has the burden to prove otherwise by a preponderance of evidence. Ruse, 138 Wn.2d at 5.

We review the superior court's decision, not the Board's order. Birgen v. Dep't of Labor & Indus., 186 Wn. App. 851, 856, 347 P.3d 503 (2015). We review the record to determine "'whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings.'" Ruse, 138 Wn.2d at 5-6 (quoting Young v. Dep't of Labor & Indus., 81 Wn. App. 123, 128, 913 P.2d 402 (1996)). Substantial evidence is enough evidence to persuade a fair-minded, rational person of the truth of the declared premise. Mowat Constr. Co. v. Dep't of Labor & Indus., 148 Wn. App. 920, 925, 201 P.3d 407 (2009). We review the record in the light most favorable to the party that prevailed in superior court and do not reweigh or rebalance competing testimony and inferences. Stone v. Dep't of Labor & Indus., 172 Wn. App. 256, 260, 289 P.3d 720 (2012).

Workers' Compensation Benefits

Under the IIA, a worker injured in the course of employment is entitled to compensation. RCW 51.32.010; Tobin v. Dep't of Labor & Indus., 145 Wn. App. 607, 613, 187 P.3d 780 (2008), aff'd, 169 Wn.2d 396, 239 P.3d 544 (2010).

After an industrial injury, a worker covered by industrial insurance is entitled to necessary and proper medical and surgical services during the period of disability caused by the injury. RCW 51.36.010(2)(a). And a worker with a "[t]emporary total disability" receives "time loss" benefits as a wage replacement

benefit while the worker is temporarily incapacitated from performing work at gainful employment. RCW 51.32.090(1); Hubbard v. Dep't of Labor & Indus., 140 Wn.2d 35, 43, 992 P.2d 1002 (2000). A "'[t]emporary total disability'" is a condition that "temporarily incapacitates a worker from performing any work at any gainful employment." Hubbard, 140 Wn.2d at 43.

If a claimant's condition has stabilized so that it cannot be improved with further treatment, the condition is "fixed" for purposes of closing the temporary total disability claim and determining the permanent disability award, if any. Pybus Steel Co. v. Dep't of Labor & Indus., 12 Wn. App. 436, 438-39, 530 P.2d 350 (1975); see also Franks v. Dep't of Labor & Indus., 35 Wn.2d 763, 766-67, 215 P.2d 416 (1950). In other words, temporary total disability ends when the claimant's condition has become "fixed and stable" or as soon as "the claimant is able to perform any kind of work." Hunter v. Bethel Sch. Dist., 71 Wn. App. 501, 507, 859 P.2d 652 (1993); see also Shafer v. Dep't of Labor & Indus., 166 Wn.2d 710, 716-17, 213 P.3d 591 (2009). A worker with a "permanent partial disability" receives a one-time award of benefits based on the loss of function. RCW 51.32.080; Boeing Co. v. Doss, 183 Wn.2d 54, 60, 347 P.3d 1083 (2015).

### Cessation of Time Loss Benefits on August 17, 2017

Bayna contends that in the period between August 18, 2017, and March 15, 2018, she was totally temporarily disabled and unable to obtain or maintain employment.[2] She maintains that, in finding otherwise, the court failed to

---

[2] CHI argues that we must treat the superior court's findings as verities on appeal because Bayna does not sufficiently identify the findings she challenges. See In re Contested Election of Schoessler, 140 Wn.2d 368, 385, 998 P.2d 818

consider the following facts: (1) her medical providers did not approve her return to her prior position as an ICU nurse, (2) her employer was unable to offer modified or light duty work during that period, (3) she continued to undergo treatment for her shoulder injury during that period, and (4) she sustained additional injuries to her wrist and low back during treatment that were attributable to her original injury. Bayna also asserts that the trial court misapplied the law because, as the trier of fact, it failed to give special consideration to the opinions of her attending physicians in accordance with Hamilton v. Dep't of Labor & Indus., 111 Wn.2d 569, 571, 761 P.2d 618 (1988) (stating a "long-standing rule of law in workers' compensation cases that special consideration should be given to the opinion of a claimant's attending physician").

Bayna's inability to return to her prior position as an ICU nurse and CHI's failure to offer her a light duty position do not mean that Bayna was not reasonably employable. Likewise, Bayna's entitlement to medical benefits and continued medical treatment during the period in question are separate issues and not determinative of whether she could maintain employment during that period. Both treating physicians Drs. Nayan and Fujisaki approved Bayna's release to work as a nurse case manager, a "sedentary" position, on August 15, 2017. CHI's expert witnesses also testified that as of August 2017, Bayna was able to work as a nurse case manager. Thus, all four medical providers and the

---

(2000) (unchallenged findings are verities on appeal). But although Bayna does not refer to the court's findings by number, she sufficiently describes the findings and it is clear that she challenges findings of fact 4 through 7.

9

vocational counselor agreed that Bayna was capable of performing the job of a nurse case manager between August 18, 2017, and March 15, 2018.

None of the evidence, including the testimony of Drs. Nayan or Fujisaki, suggested that any condition related her right wrist or low back rendered Bayna unable to perform necessary functions of a nurse case manager. Thus, even with "careful thought" to the opinions of Bayna's attending physicians, the record supports the superior court's finding that Bayna could "perform and obtain gainful employment." See Hamilton, 111 Wn.2d at 572 (special consideration does not mean the trier of fact must give more weight or credibility to the attending physician's testimony, only that it should give the testimony "careful thought").

The evidence also does not support the premise that work conditioning caused Bayna's claimed new injuries. Bayna reported low back discomfort during therapy exercises to Dr. Fujisaki when she last saw him in September 2017. But she did not report a specific injury, and he concluded that her back pain was unrelated to the shoulder work-related injury. Around this time, Dr. Nayan observed some minor limitations of movement in the low back but testified that a lumbar X-ray indicated only "degenerative disk disease." Both of CHI's expert witnesses agreed with Dr. Fujisaki's assessment that any low back pain was unrelated to the original neck and shoulder injury. Dr. Kretschmer specifically concluded that Bayna's condition was attributable to genetics and aging, not industrial injury.

As to Bayna's right wrist, according to a September 2017 physical therapy note, Bayna experienced pain, which she described as "four out of ten," during

two different therapy exercises.  Bayna subsequently told Dr. Nayan that her wrist pain was "aggravated" by the work conditioning program and, on his recommendation, she stopped participating in the program.  Dr. Nayan examined Bayna in September and November of 2017 and noted some swelling, soreness, and "minor limitation of movements."  Dr. Nayan ordered a wrist X-ray, which did not indicate any abnormalities of the bone or soft tissue.  The Department denied Dr. Nayan's request for an MRI.

Dr. Nayan noted a "temporal" relationship between Bayna's work conditioning and her symptoms, and suggested her wrist injury "should at least be looked at," but also expressly declined to offer an opinion as to whether Bayna's wrist injury should be included in her claim for benefits based on her 2015 injury.  Dr. Kretschmer testified that based on his review of the physical therapy notes, diagnostic tests, and examination reports, there was no evidence of abnormality or injury to Bayna's wrist.  And Dr. Dupree's February 2018 examination revealed no deficiencies as to range or strength and concluded that any issue related to her wrist was not connected to the shoulder injury.

Substantial evidence in the record supports the determination that Bayna was able to obtain and maintain employment between August 18, 2017, and May 18, 2018.  That finding, in turn, supports the court's conclusion that she was not a totally disabled worker during that time period.

<u>Claim Closure on May 18, 2018</u>

Bayna challenges the trial court's finding that, as of May 18, 2018, her condition related to her work-related injury was "fixed and stable" and she required no "further proper and necessary treatment."

Here, too, Bayna's argument is based on the injuries she claims to have sustained during therapy prescribed to treat her shoulder and argues that she was entitled to additional medical benefits. Washington recognizes the rule, referred to as the compensable consequences doctrine, which establishes that if treatment performed for an industrial injury causes complications or aggravates the injury, the claim covers the resulting treatment. <u>Clark County v. Maphet</u>, 10 Wn. App. 2d 420, 438, 451 P.3d 713 (2019).

Nevertheless, as explained above, the facts before the Board did not establish that Bayna sustained injuries to her low back and wrist during work conditioning. While Dr. Nayan observed a temporal relationship, he only said that "if" Bayan injured her wrist and back during work conditioning, the Department "should at least try" to expand the claim. But he did not opine that Bayna's conditions were caused or exacerbated by the therapeutic treatment for her shoulder. The other three physicians expressly agreed that this was not the case. And even if the evidence showed that Bayna's treatment caused new injuries, there was no evidence indicating that she needed medical treatment for those conditions as of May 2018. It appears from the record that Dr. Dupree conducted the last examination of Bayna on February 15, 2018, and found nothing to suggest that she required treatment for her wrist or low back. And,

none of the medical providers testified that Bayna needed further medical treatment for her shoulder as of May 18, 2018. Bayna does not argue otherwise.

Permanent Partial Disability Award

Even if her condition was "fixed" warranting closure of her claim, Bayna challenges the evidence supporting the court's finding that she had no "permanent partial disability proximately caused by the October 9, 2015 injury."

Dr. Nayan concurred with the results and conclusions of Dr. Dupree's IME, except as to the conclusion that she was not entitled to a partial permanent disability award. He suggested that the Department review the physical therapy notes and recalculate the impairment rating, because he believed the rating should be based on both strength and range of motion deficits.

But there is no evidence in the record of impairment that would warrant such an award. As noted, Dr. Dupree's February 2018 examination revealed normal range of motion and strength levels in both shoulders and upper and lower extremities. Bayna argues that Dr. Nayan examined her on March 15, 2018, the date he last saw her, and made contrary objective clinical findings of strength deficits that were the basis of his recommendation to reevaluate the impairment rating. See WAC 296-20-19000 ("Industrial Insurance Act requires that permanent partial disability be established primarily by objective physical or clinical findings establishing a loss of function."). But, in fact, Dr. Nayan did not testify that he examined Bayna on that date or testify about any clinical findings in 2018.

Even considering Dr. Nayan's misgivings about Bayna's impairment rating, substantial evidence in the record supports the court's finding about the lack of a permanent partial disability proximately caused by her 2015 injury.

Motion To Transfer Case Assignment

Finally, Bayna raises a procedural issue related to her appeal to superior court. The ordinary civil standards of review, rules of evidence, and rules of civil procedure govern appeals from superior court decisions in IIA cases. RCW 51.52.140.

On March 5, 2020, almost five months after she filed her notice of appeal and without having filed her opening brief on appeal that was due on February 28, Bayna filed a "Motion to Transfer Case Assignment Area Designation" in superior court. Bayna sought to redesignate the type of case, from "Administrative Law Review (ALR 2)" to a more specific designation, "Board of Industrial Insurance Appeals – Workers Comp (ALRLI 2)." Bayna's motion asserted that she "correctly filled out the papers," but the court did not properly designate the case or issue the appropriate case schedule. She cited King County Superior Court Local Civil Rule (KCLCR) 82, a rule that governs case assignment areas, as the basis for her motion. In her request for relief, Bayna asked the court to change the "Case Assignment Designation," not the area designation, and to issue a new case schedule.

CHI opposed the motion and asserted that it was prepared to proceed to the bench trial set for April 17, 2020.[3] CHI pointed out that KCLCR 82 authorized

---

[3] The bench trial did not occur until several months later, on July 10, 2020.

only a transfer of the case area designation from Kent to Seattle, which Bayna was not seeking.[4] CHI pointed out that the plaintiff herself chose the ALR 2 designation because she had not used the most current case information cover sheet, which includes the specific workers compensation category. CHI also posited that, based on an e-mail Bayna's counsel's assistant sent to the bailiff, it appeared that Bayna was trying to obtain a new case schedule in order to remedy the failure to file a jury demand.

After reviewing the motion, response, and the court file, the superior court denied the motion.

Bayna now claims the court erred in denying her motion because by doing so, the court violated her right to a jury trial under RCW 51.52.115 (On appeal of a Board decision to superior court, "either party shall be entitled to a trial by jury upon demand.").

But while CR 38 preserves the right of trial by jury in civil cases, it requires a party to exercise the right through specific acts. CR 38(b) required Bayna to serve a jury trial demand on the other party, file the demand with the court clerk,

---

[4] KCLCR 82(e)(4)(D) states:
**Motions By Party to Transfer**. Motions to transfer court proceedings from one case assignment area to another shall be presented to the Respective Chief Judge. Such motions shall be made in writing as required by LCR 7; shall be ruled on by the Court without oral argument; and shall be noted for consideration no later than 14 days after the date for filing the Confirmation of Joinder of Parties, Claims, and Defenses in civil cases, as required in LCR 4.2(a), or the date for filing of the Confirmation of Issues in domestic cases, as required by LFLR 4(c). All cases shall proceed in the original case assignment area until an order of transfer is entered. Proceedings in the assigned area shall not preclude the timely filing of a motion to transfer.

and pay a jury fee. She did none of these things. Under CR 38(d), this failure constitutes waiver of the right to a jury trial. She did not mention her right to a jury trial or the jury demand deadline or ask the court to exercise its discretion to extend the deadline for filing a jury demand. See Sackett v. Santilli, 101 Wn. App. 128, 134, 5 P.3d 11 (2000) (Even where a party fails to demand a jury trial according to court rules, the trial court may exercise its discretion to grant a jury trial.), aff'd, 146 Wn.2d 498, 47 P.3d 948 (2002). Instead, she filed a motion under KCLCR 82, which authorized the court only to change the case area designation, which was clearly different from the relief she sought.

Although Bayna claims that the court's ruling on her motion led to a "devastating result," she provides no authority to support her claim that, based on the materials before it, the court erred or abused its discretion.[5]

Finally, Bayna requests attorney fees on appeal under RCW 51.52.130. Because we affirm the superior court's decision upholding the decision of the Board, we deny the request.

Affirmed.

WE CONCUR:

---

[5] Bayna does not address the standard of review, but our conclusion is the same whether we apply a de novo or abuse of discretion standard.

16