[No. 15145-6-II. Division Two. October 19, 1993.]

MARILYN HUNTER, *Respondent*, v. BETHEL SCHOOL DISTRICT, *Appellant*.

*Janet L. Smith* and *Thomas G. Hall & Associates,* for appellant.

*Charles Talbot* and *Charles Talbot & Associates,* for respondent.

PETERSON, J.[*] — Bethel School District appeals the trial court's award of time-loss compensation to its injured employee, Marilyn Hunter. We reverse.

On April 18, 1985, Marilyn Hunter was working as a substitute custodian for Bethel School District when a garbage can she was moving fell off its wheels and struck her leg. By April 25, her knee had become too painful to work. She went to a doctor who placed her leg in a splint and referred her to an orthopedic surgeon. The surgeon performed two arthroscopic surgeries on Hunter's knee.

Hunter filed a claim for industrial insurance benefits on June 24, 1985. On July 15, 1985, the Department of Labor and Industries issued an order allowing the claim. The District, which was self-insured, paid Hunter's time-loss compensation and medical expenses until November 21, 1986. It terminated her benefits after a vocational evaluation specialist determined Hunter was capable of reasonably continuous light clerical work.

Hunter petitioned the Department for an order directing the District to reinstate her benefits. On review, the Department determined that, from November 21, 1986, through April 11, 1988, Hunter had been "temporarily totally disabled" within the meaning of RCW 51.32.090. The Department ordered the District to pay time-loss compensation for that period of Hunter's disability. The Department also determined that Hunter required further medical treatment for the softening of cartilage on the back of her kneecap and ordered the District to hold her claim open until the condition stabilized.

The District appealed this order to the Board of Industrial Insurance Appeals. The Board held a hearing, at which Hunter presented her own testimony and that of her attending physician, Dr. H. Richard Johnson. The District presented

---

[*]Judge Robert H. Peterson is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

three witnesses, Dr. Daniel Voiss, Dr. Jose Ochoa, and John Shervey, a vocational evaluation specialist.

Dr. Johnson testified he had not released Hunter for work and that the softening of cartilage on the back of her knee-cap continued to cause her pain, but that the pain would subside with further treatment. Dr. Johnson also testified he had evaluated Hunter's physical capabilities on November 3, 1986. He stated that during an 8-hour workday Hunter was capable of sitting 8 hours, standing 4 hours, and walking 2 hours, and that she could lift 5 pounds continuously, 6 to 20 pounds frequently, and 21 to 25 pounds occasionally. He further testified that Hunter's physical capabilities had remained stable since that report.

John Shervey, a vocational evaluation specialist, testified he used Dr. Johnson's report to analyze Hunter's employability. At the time of Shervey's evaluation, Hunter was 35 years old, had a 2-year college degree in business machines and applications, and had 2 years of experience as a general clerk. Shervey testified that these qualifications and physical capabilities enabled her to perform light clerical work, including data entry.

Dr. Jose Ochoa, a clinical neurologist, testified he had given Hunter a comprehensive neurological examination on December 7, 1987, and found no organic basis for Hunter's pain.

Dr. Daniel Voiss, a neurologist and psychiatrist who specializes in evaluating complaints of pain to determine whether the pain has an organic basis, also testified. He stated that Hunter's continuing pain was entirely psychological and that, in his opinion, Hunter's injury had been mild and she should have been able to return to her job within a couple of months of the incident.

Based on the foregoing evidence, the Board affirmed the Department's ruling that Hunter needed further medical treatment, but reversed the Department's ruling that Hunter had been temporarily totally disabled from November 21, 1986, through April 11, 1988. In reaching this decision, the Board gave special consideration to the opinion of Hunter's

attending physician, Dr. Johnson. The Board found Dr. Johnson's opinion more persuasive than those of Drs. Ochoa and Voiss on the issue of Hunter's need for further medical treatment. On the issue of Hunter's employability, however, the Board found Dr. Johnson's evaluation of Hunter's physical capabilities conclusive. According to the Board, this evaluation clearly showed Hunter to be capable of reasonably continuous light clerical work and thus precluded any finding of temporary total disability.

Hunter appealed the issue of her temporary total disability to the superior court. The District cross-appealed the Board's ruling on the issue of Hunter's need for further medical treatment. The matter was tried by reading the certified appeals board record to the jury. The jury affirmed the Board's order in its entirety.

Hunter then moved for judgment n.o.v., arguing that the finding that her knee condition required further medical treatment was inconsistent with the finding that she had not been temporarily totally disabled. The trial court agreed and set aside the verdict on Hunter's entitlement to time-loss compensation. Because the trial court's award of judgment n.o.v. made Hunter successful in obtaining reversal of the Board's decision, the trial court awarded Hunter attorney fees associated with the appeal in the sum of $9,565.50, pursuant to RCW 51.52.130. The District appeals.

Although the parties have raised several issues, we limit our discussion to the dispositive issue: Whether the trial court erred in granting Hunter's motion for a judgment n.o.v. on the question of her entitlement to time-loss compensation from November 21, 1986, through April 11, 1988. In resolving this issue, our inquiry is limited to determining whether the evidence is sufficient to sustain the jury's verdict. *Industrial Indem. Co. of Northwest, Inc. v. Kallevig*, 114 Wn.2d 907, 916, 792 P.2d 520, 7 A.L.R.5th 1014 (1990). If the evidence supported the verdict, the trial court erred in setting it aside. *Kallevig*, 114 Wn.2d at 916. A review of the record convinces us that the evidence supported the verdict and, in setting it aside, the trial court erred in two respects:

(1) in holding that a claimant is temporarily totally disabled within the meaning of RCW 51.32.090, and is thus entitled to time-loss compensation, for so long as the claimant is undergoing treatment and has not been released to return to the occupation in which he or she was engaged at the time of the injury; and, (2) in usurping the role of the jury in evaluating the credibility of Dr. Johnson's testimony that Hunter was unable to return to janitorial work, and apparently disregarding the employer's testimony from Drs. Voiss and Ochoa to the contrary. We analyze each error below.

We first address the trial court's error in construing the term "temporary total disability". Hunter argues on appeal, as she did below, that a claimant is entitled to time-loss compensation until such time as his or her condition has become fixed and stable, or until such time as the claimant is able to resume his or her former employment. The District argues that the phrase "temporary total disability" means the claimant's condition is not fixed and stable and the claimant is incapable of reasonably continuous employment at any kind of generally available work.

 We resolve this dispute by analyzing the wording of the governing statute, RCW Title 51. Although this statute fails to define "temporary total disability", the context in which the term is used makes it clear that the District's definition is the correct one. The relevant section is RCW 51.32.090(1), which makes time-loss compensation available during periods of temporary total disability. RCW 51.32.090 reads, in relevant part, as follows:

> (1) When the total disability is only temporary . . . [time loss] payments . . . shall apply, so long as the total disability continues.
>
> . . . .
>
> (3) As soon as recovery is so complete that the present earning power of the worker, *at any kind of work*, is restored to that existing at the time of the occurrence of the injury, the payments shall cease. If and so long as the present earning power is only partially restored, the payments shall continue in the proportion which the new earning power shall bear to the old. . . .

(Italics ours.) The statute's plain language directs the insurer to reduce time-loss compensation as soon as earning power is

partially restored "at any kind of work" and to discontinue such payments as soon as earning power is fully restored "at any kind of work", and in this context this phrase means any kind of work generally available.

Where the wording of the statute is plain and unambiguous, there is no room for judicial interpretation. *Tellevik v. 31641 West Rutherford St.*, 120 Wn.2d 68, 76, 838 P.2d 111, 845 P.2d 1325 (1992). Since the wording of the statute plainly and unambiguously prevents claimants from drawing time-loss compensation if they are capable of earning a wage at "any kind of employment", we hold that "temporary total disability" terminates as soon as the claimant's condition has become fixed and stable or as soon as the claimant is able to perform any kind of work.

This interpretation is consistent with the statute's underlying purpose, which is to insure against loss of wage-earning capacity. *Nash v. Department of Labor & Indus.*, 1 Wn. App. 705, 708-09, 462 P.2d 988 (1969). If the statute were to allow claimants to draw time-loss compensation until they were able to return to their former employment, the statute would insure against loss of the opportunity to pursue a chosen occupation. Nothing in the language of the statute, in its legislative history, nor in case law indicates that the Legislature intended to insure against such loss.

Hunter asserts that Washington case law has held that as long as a claimant is undergoing medical treatment and is unable to return to the same employment as when injured the claimant is "temporarily totally disabled". Hunter supports her argument with the following excerpt from *Lightle v. Department of Labor & Indus.*, 68 Wn.2d 507, 413 P.2d 814 (1966):

> Time loss compensation resulting from a compensable injury is that temporary compensation which a workman is entitled to receive from the fund while totally incapacitated to perform work for his employer, and before his disability condition has been fixed or determined.

*Lightle*, 68 Wn.2d at 510. In *Lightle*, the appeal was limited to a single issue: "Does the Industrial Insurance Act permit a

widow to pursue her husband's unliquidated claim for time-loss compensation?" *Lightle*, 68 Wn.2d at 509. The court did not define temporary total disability; thus, the excerpt from page 510 of *Lightle* is dicta.

The only court to interpret temporary total disability interprets the term as we do, albeit on a somewhat different basis. In *Bonko v. Department of Labor & Indus.*, 2 Wn. App. 22, 24, 466 P.2d 526 (1970), the plaintiff was able to work, although not at his former employment, and was still undergoing treatment for his industrial injury. The plaintiff argued he was temporarily totally disabled within the meaning of RCW 51.32.090 as long as he was undergoing treatment and was incapable of returning to his former employment. *Bonko*, 2 Wn. App. at 25.

Relying on the familiar canon of statutory construction that "when similar words are used in different parts of a statute, the meaning is presumed to be the same throughout", the court defined "temporary" total disability by referring to the statutory definition of "permanent" total disability. *Bonko*, 2 Wn. App. at 25 (quoting *DeGrief v. Seattle*, 50 Wn.2d 1, 11, 297 P.2d 940 (1956)). The statute defines permanent total disability as a "condition permanently incapacitating the worker from performing any work at any gainful occupation." RCW 51.08.160. According to case law, a worker is incapable of performing any work at any gainful occupation if the worker's injury, combined with his or her age, education, and training, has rendered the worker unable to obtain any kind of work with a reasonable degree of occupational continuity and fit only for odd jobs and special work which is not generally available on the open job market. *Nash v. Department of Labor & Indus.*, 1 Wn. App. 705, 462 P.2d 988 (1969). Holding that the only difference between a permanent total disability and a temporary total disability is the duration of the disability, the *Bonko* court reasoned that claimants lose their rights to time-loss payments as soon as they are able to earn a wage at any kind of reasonably continuous and generally available employment. *Bonko*,

2 Wn. App. at 25. *Bonko* further held that the need for treatment does not, in and of itself, make one temporarily totally disabled. *Bonko*, 2 Wn. App. at 25.

Hunter contends the Legislature overruled *Bonko* when it added subsection (4) to RCW 51.32.090 in 1975. Former subsection (4) provides:

> Whenever an employer requests that a worker *who is entitled to temporary total disability under this chapter* be certified by a physician as able to perform available work other than his or her usual work, the employer shall furnish to the physician, with a copy to the worker, a statement describing the available work in terms that will enable the physician to relate the physical activities of the job to the worker's disability. The physician shall then determine whether the worker is physically able to perform the work described. If the worker is released by his or her physician for said work, and the work thereafter comes to an end before the worker's recovery is sufficient in the judgment of his or her physician to permit him or her to return to his or her usual job, or to perform other available work, the worker's temporary total disability payments shall be resumed. Should the available work described, once undertaken by the worker, impede his or her recovery to the extent that in the judgment of his or her physician he or she should not continue to work, the worker's temporary total disability payments shall be resumed when the worker ceases such work.
>
> Once the worker returns to work under the terms of this subsection, he or she shall not be assigned by the employer to work other than the available work described without the worker's written consent, or without prior review and approval by the worker's physician. . . .

(Italics ours.)

The pertinent language of subsection (4) is the phrase, "worker who is entitled to temporary total disability under this chapter". We interpret this phrase as making subsection (4) applicable to claimants who are incapable of reasonably continuous employment in work that is generally available on the open job market. Where a claimant is otherwise temporarily totally disabled, subsection (4) structures the conditions under which employers may employ them in specially created jobs. Therefore, subsection (4) does not abrogate *Bonko*, and we hold that the phrase "temporary total disability" means

the claimant is temporarily incapable of performing generally available work of any kind on a reasonably continuous basis.

■ Because it misinterpreted "temporary total disability", the trial court misjudged the sufficiency of the evidence. Dr. Johnson evaluated Hunter's physical capabilities on November 3, 1986. Shervey considered these physical capabilities, along with Hunter's age, education, training, and work experience, and decided that Hunter was employable in any number of clerical positions. Because a claimant is not temporarily totally disabled if the claimant is capable of earning a wage in any kind of generally available employment, and because light clerical work is generally available employment, this evidence was sufficient to establish that Hunter's earning power had been restored and that she was not "temporarily totally disabled" within the meaning of RCW 51.32.090. Further, the finding that she was in need of further treatment did not preclude a finding that her earning power had been restored and that she was not "temporarily totally disabled". *See Bonko*, 2 Wn. App. at 25.

■ We turn now to a discussion of the trial court's second error, which was to substitute its evaluation of the evidence of Hunter's ability to return to work for that of the jury. We begin our analysis by noting that the trial court was required to find that the evidence was sufficient to sustain the jury's verdict unless it could say as a matter of law that there was no competent evidence, nor reasonable inferences arising therefrom, to sustain it. *Van Hout v. Celotex Corp.*, 121 Wn.2d 697, 706, 853 P.2d 908 (1993); *Shelby v. Keck*, 85 Wn.2d 911, 913, 541 P.2d 365 (1975). In evaluating this evidence, the court was required to view all material evidence and reasonable inferences in favor of the District. *Kallevig*, 114 Wn.2d at 915. This the court did not do.

The District produced sufficient evidence to support the jury's verdict that Hunter was employable during the relevant time period. Dr. Johnson testified that he had not released Hunter to return to her former employment. However, Dr. Voiss testified that Hunter's pain was purely psychological and that, in his opinion, her injury had been mild and had not

restricted her employability in any way from November 21, 1986, forward. Moreover, Dr. Ochoa testified that, on December 7, 1987, he found no organic basis for Hunter's pain and that he would place no employment restrictions on Hunter as a result of her injury. In view of its limited role in deciding motions for judgments n.o.v., the trial court erred in accepting the testimony of Dr. Johnson over the testimonies of Drs. Voiss and Ochoa.

In conclusion, the trial court erroneously defined the term "temporary total disability" and improperly usurped the role of the jury in evaluating the credibility of the evidence of temporary total disability. Judged against the correct standard, the evidence was sufficient to support a finding that Hunter was capable of gainful employment in a clerical capacity and, further, that Hunter had recovered from her injury and was capable of resuming employment as a janitor. For these reasons, the trial court erred in setting aside the verdict.

The trial court's judgment n.o.v. is reversed and the judgment for attorney fees is vacated. The jury's verdict affirming the decision and order of the Board of Industrial Insurance Appeals is reinstated.

SEINFELD, A.C.J., and MORGAN, J., concur.

Review denied at 123 Wn.2d 1031 (1994).