FILED
COURT OF APPEALS
DIVISION II

2015 APR 28 AM 8: 38

STATE OF WASHINGTON
BY_____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| MARK W. OSBORN, | No. 45828-4-II |
| Appellant | |
| v. | |
| DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, | UNPUBLISHED OPINION |
| Respondent. | |

MELNICK, J. — Mark Osborn appeals from the superior court's affirmance of the Board of Industrial Insurance Appeals's (Board's) decision and order closing Osborn's temporary total disability claim. Osborn argues that he had a temporary total disability on February 5, 2010. We disagree and affirm the superior court.

## FACTS

Osborn worked as a truck driver for 25 years. As a result, he suffers from bilateral carpal tunnel syndrome, a left shoulder SLAP (superior labrum anterior to posterior) lesion with internal derangement and tendonitis, and bilateral cubital tunnel syndrome. Osborn received benefits from the Department of Labor and Industries (L&I) for these conditions. He also received physical therapy and participated in a "work hardening" program. Administrative Record (AR) (Dr. Mark Holmes) at 10.

In 2008 and 2009, Osborn received several medical evaluations. Dr. William Stump found that Osborn exhibited full shoulder and elbow motion, good general strength, and normal senses and reflexes. Dr. David Smith found that Osborn's condition was "basically normal except for very mild loss of motion and only one pain in his shoulder," as well as "residual numbness in his

hands." AR (Smith) at 20. Dr. Patrick Bays opined that Osborn was "capable of gainful employment on a reasonably continuous basis," albeit with "permanent restrictions." AR (Bays) at 17. Dr. Mark Holmes agreed that Osborn was able to work. All four doctors agreed that Osborn's condition had become fixed and stable: further treatment would not be helpful.

In January 2010, L&I closed Osborn's claim and provided him with a permanent partial disability award. Osborn protested the closure of his claim, but L&I affirmed its order on February 5, 2010.

Osborn appealed L&I's decision to the Board. He presented the testimony of occupational therapist Megan Milyard, who found that Osborn's conditions impaired both his manual dexterity and his ability to carry out repetitive movements. As such, Milyard opined that Osborn could not work as a light delivery driver or a service writer without modifications to his job duties. Vocational rehabilitation counselor Margaret Dillon testified to the contrary. Dillon opined that Osborn could work as a light delivery driver because the job did not involve heavy grasping and releasing.

Osborn also presented the testimony of Dr. Stump, who opined that Osborn could not work on a full-time basis between October 7, 2009, and February 5, 2010. However, Dr. Smith testified to the contrary and opined that Osborn was capable of gainful employment during the same time period. Dr. Holmes also testified and stated that he believed Osborn could work during that time period, so long as he avoided "repetitive overhead work." AR (Holmes) at 26.

Based on the testimony presented, the Board reversed and remanded L&I's order.[1] In relevant part, the Board found that:

> 4. During the period of October 7, 2009,[2] through February 4, 2010, Mr. Osborn's occupational disease conditions precluded him from obtaining or performing reasonably continuous gainful employment in the competitive labor market in light of his age, education, and work experience.
>
> 5. As of February 5, 2010, all of Mr. Osborn's occupational disease conditions were medically fixed and stable and none of them required further proper and necessary medical treatment.

AR at 7. The Board then concluded that Osborn was temporarily totally disabled, within the meaning of RCW 51.32.090, between October 7, 2009, and February 4, 2010. The Board also concluded that Osborn was permanently partially disabled within the meaning of RCW 51.32.080, as of February 5, 2010.

Osborn appealed to the Kitsap County Superior Court, which ruled that a preponderance of the evidence supported the Board's findings of fact. The superior court adopted and incorporated by reference the Board's findings of fact and conclusions of law. The superior court entered an additional conclusion of law that Osborn was "not entitled to temporary total disability benefits as of and after the date of [L&I's] closing order of February 5, 2010." Clerk's Papers (CP) at 61. Osborn appeals from the superior court's order affirming the Board. Although Osborn raised several issues below, Osborn's assignments of error before us involve only his disability status on a single day—February 5, 2010.

---

[1] The Board reversed L&I's valuation of Osborn's permanent partial disability award, increasing the award in Osborn's favor. That part of the Board's decision is unrelated to this appeal.

[2] The Board uses this date because L&I terminated Osborn's time-loss compensation benefits effective October 6. This decision is not at issue in this appeal.

ANALYSIS

I. STANDARD OF REVIEW

"Washington's Industrial Insurance Act [IIA] includes judicial review provisions that are specific to workers' compensation determinations." *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 179, 210 P.3d 355 (2009). Under the IIA an "[a]ppeal shall lie from the judgment of the superior court as in other civil cases," i.e., we review the superior court's decision rather than the Board's decision.[3] RCW 51.52.140; *Rogers*, 151 Wn. App. at 180. Accordingly, we review the superior court's decision following a bench trial in a workers' compensation case by asking whether substantial evidence supports the superior court's challenged findings of fact and whether the findings support its conclusions of law. *Rogers*, 151 Wn. App. at 180. "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the matter asserted." *Robinson v. Dep't of Labor & Indus.*, 181 Wn. App. 415, 425, 326 P.3d 744, *review denied*, __ Wn.2d __, 337 P.3d 325 (2014).

In carrying out this review, we view the record in the light most favorable to the party who prevailed in superior court and do not reweigh or rebalance the competing testimony and inferences, or apply anew the burden of persuasion. *Harrison Mem'l Hosp. v. Gagnon*, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002). In this case, we view the evidence in the light most favorable to L&I.

II. DISABILITY STATUS

Osborn argues that he was temporarily totally disabled on February 5, 2010. We disagree and hold that substantial evidence supported the superior court's finding that as of February 5,

---

[3] The IIA's review scheme results in a different role for us than is typical from appeals of administrative decisions under the Administrative Procedure Act, chapter 34.05 RCW, where we sit in the same position as the superior courts. *Rogers*, 151 Wn. App. at 180.

Osborn's conditions were medically fixed and stable, which in turn supports its conclusion that Osborn was not temporarily totally disabled on February 5.

RCW 51.32.090(1) provides for continuing payments when a worker has a "total disability [that] is only temporary." A "[t]emporary total disability" is a condition that *"temporarily incapacitates a worker from performing any work at any gainful employment." Hubbard v. Dep't of Labor & Indus.*, 140 Wn.2d 35, 43, 992 P.2d 1002 (2000) (emphasis added). If a claimant's condition has stabilized so that it cannot be improved with further treatment, the condition is "fixed" for purposes of closing the temporary total disability claim and determining the permanent disability award, if any. *Pybus Steel Co. v. Dep't of Labor & Indus.*, 12 Wn. App. 436, 438-39, 530 P.2d 350 (1975); *see also Franks v. Dep't of Labor & Indus.*, 35 Wn.2d 763, 766-67, 215 P.2d 416 (1950). Accordingly, temporary total disability ends "as soon as the claimant's condition has become fixed and stable *or* as soon as the claimant is able to perform any kind of work." *Hunter v. Bethel Sch. Dist.*, 71 Wn. App. 501, 507, 859 P.2d 652 (1993) (emphasis added); *see also Shafer v. Dep't of Labor & Indus.*, 166 Wn.2d 710, 716-17, 213 P.3d 591 (2009); *Franks*, 35 Wn.2d at 766-67.

Here, the superior court found that Osborn's conditions were "medically fixed and stable" as of February 5, 2010. CP at 61 (adopting the Board's findings from AR at 7). Substantial evidence supports this finding.

A condition is fixed and stable when "maximum medical improvement" occurs, meaning "no fundamental or marked change in an accepted condition can be expected, with or without treatment." WAC 296-20-01002. All of the doctors who testified agreed that Osborn had reached maximum medical improvement by February 2010. As early as 2008, Osborn's doctors found that further treatment would not have had any benefit. Osborn provided no evidence to the contrary.

We hold that substantial evidence supported the superior court's finding that Osborn's condition was fixed and stable as of February 5, 2010. We also hold that this finding supports the superior court's conclusion that Osborn's temporary total disability status ended on February 4. *See Hunter*, 71 Wn. App. at 507.

Osborn argues that the superior court erred by ending Osborn's temporary total disability status on February 4 because no evidence was presented to show any restoration of his earning power. But the superior court was not required to find that Osborn's earning power was restored in order to end his temporary total disability status. Temporary total disability ends as soon as one of two conditions occurs: when the claimant is able to perform any kind of work *or* when the claimant's condition has become fixed and stable. *Hunter*, 71 Wn. App. at 507. Because Osborn's condition was fixed and stable as of February 5, the superior court could conclude that his temporary total disability status ended irrespective of whether he was capable of gainful employment.[4]

Substantial evidence shows that by February 5, 2010, Osborn's condition was fixed and stable. The superior court's finding that Osborn's condition was fixed and stable on February 5 alone supports its conclusion that Osborn was not temporarily totally disabled on that date. Therefore, the superior court did not err.

---

[4] We also disagree with Osborn's allegation that no evidence was presented to show any restoration of his earning power. Although the Board and superior court did not make the superfluous finding that Osborn was capable of gainful employment, the record did contain substantial evidence showing that Osborn was capable of performing some kind of work on February 5, 2010. Dr. Smith and Dr. Holmes, as well as Osborn's rehabilitation counselor, testified that Osborn could perform light work during the period between October 2009 and February 2010.

III.    ATTORNEY FEES

Osborn requests reasonable attorney fees under RCW 51.52.130.  The statute provides for attorney fees in the event that the Board's "decision and order is reversed or modified and additional relief is granted to a worker or beneficiary."  RCW 51.52.130(1).  Because we affirm the superior court's affirmance of the Board's decision and order, we decline Osborn's request for fees.

We affirm the superior court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Maxa, P.J.

_____
Lee, J.